William Randall STEINER, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12747.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1959.

As Amended on Rehearing Feb. 10, 1960.

John D. Harris, Frank M. Rowell, Jr., Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error, William Randall Steiner, hereinafter referred to as defendant, was charged by information in the district court of Tulsa County with the crime of grand larceny; was tried before a jury, convicted and the jury being unable to agree upon the penalty to be assessed left that to the court, who assessed punishment at confinement in the State Penitentiary for a period of three years. Appeal has been duly perfected.

For reversal four specifications of error are advanced, and will be treated in the order presented.

The information charged that defendant:

" * * * on the 5th day of April, A.D. 1958, in Tulsa County, State of Oklahoma, and within the jurisdiction of this Court, did unlawfully, stealthily and feloniously take, steal and carry away, without the consent of the owner thereof, certain personal property, to-wit: stamps of the total aggregate value of $1200.00 in good and lawful money of the United States of America, the personal property of one H. L. Whitman, with the unlawful and felonious intent then and there upon the part of said defendant to deprive the owner thereof permanently and to convert the same to his own use and benefit, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

A summary of the evidence is indicated at this point.

Jack M. Wells testified that he lived at 1732 South Quaker, Tulsa, and that he and his son ran a greeting card shop, and he collected stamps at times. He said that he was acquainted with Mr. H. L. Whitman and knew him as a stamp collector and seller, and had known him several years prior to April 5, 1958. Witness stated that on the day mentioned a man came into his shop and made inquiry about high-priced stamps, naming three or four, and some Columbians. He also wanted five dollar gold pieces. Witness told him that he only had cheaper stamps for kid's packages and things of that kind. Witness referred the customer to Mr. Whitman, making an appointment by telephone. Witness stated that the man looked like the defendant but he did not observe him closely and did not want to swear positively that this man and the defendant were one and the same person.

Mary Tarpley testified that she was a clerk employed by Jack Wells and she remembered that on April 5, 1958 a man came in wanting to buy stamps, but she said she referred him to Mr. Wells, who was in the back of the shop, and did not overhear the conversation; that this was right around noon and Mr. Wells did not have the stamps the customer wanted. She said defendant looked like the customer, but she could not be positive. Said she:

"Well, it looks like him, he had on cow-boy boots, he was tall, we talked about the wind, it was blowing hard that day, he said it didn't blow that hard in Texas."

Harry L. Whitman, the prosecuting witness, testified that he lived at 1946 North Elwood, Tulsa, and was engaged in the oil business, and also in the stamp business as a hobby. That this was true on April 5, 1958. He said that he collected stamps, and:

that people came to him to make purchases. He said that he did not know the defendant personally, but knew him by sight "after having a dealing with him". He said that on April 5, 1958 at approximately 2 p. m. a man came to his place and asked to see some stamps, and wanted high-priced, unusual United States stamps. That the customer said: "Let's see, for instance, a set of blocks of the Zeppelin." Witness further stated: "Before getting them out, I told him that would set him back $450." Witness said that his customer did not object to the price and wanted to see the stamps and he got them out for him. He said his customer, whom he identified as the defendant, said he would take the stamps and asked that they be stacked in a pile for him, and stated that there were other items that he needed, and proceeded to name various other stamps, and witness pulled out various issues and defendant had him stack some, and others were put aside. The stamps defendant did not want were placed back in stock books by witness. Defendant looked at stamps for about two hours, and witness listed various stamps that defendant purchased. At the close of the transaction defendant wanted to pay for his purchase by check, but witness would not accept a check, so the sale fell through. Defendant told witness he was stopping at the Mayo Hotel and wanted to order a taxi, but witness agreed to drive defendant to his hotel, and did so.

When witness returned home he checked his stamps and found that a large block, worth from twelve to fifteen hundred dollars and that he had shown defendant, were missing. Witness made a trip to the police department and gave them a description of defendant.

On cross-examination witness said that he was positive the man who came to his home to look at stamps and the defendant were one and the same person. He said that at the police station out of about a dozen photographs of persons he selected a photograph of the defendant as being his customer. Witness further stated that during the time defendant was at his place

they found that they had a mutual acquaintance in Forth Worth, Texas, by the name of Willard Jackson, so after witness missed the stamps he telephoned Mr. Jackson at Fort Worth and gave his friend a description of defendant, and was told by his friend that his customer had been William Steiner. The photograph he subsequently selected at the police station proved to be that of William Steiner, the defendant.

There was much other testimony concerning opportunity for the defendant to steal the stamps when witness would turn his back to look for other stamps called for, and other features.

The prosecution and defense then entered into a stipulation that if Mrs. Beatrice Gibbs were present she would testify that on April 5, 1958 Bill Steiner checked into the Y.M.C.A. giving 1912 Washington Street, Fort Worth, Texas, as an address, and that on April 8, 1958 she identified a photograph of William Steiner, shown to her.

This ended the evidence for the State. The defendant interposed a demurrer, which was overruled.

Counsel for the defendant outlined to the jury his defense, as follows:

"We anticipate calling Mrs. Steiner, William Randall Steiner's mother, and ask her to give you a brief history of Bill's life.

"First of all, as I explained to you in my voir dire, the burden of proof is on the State but at this time you gentlemen of the jury are the only ones who know whether the State had reached its burden, but nevertheless we at this time call Mrs. Steiner, who will testify as to her son's condition throughout his life and up to the present time. Even in your own mind if Mr. Steiner was in Mr. Whitman's home, if he was there and taking the stamps, then I want you to listen to Mrs. Steiner's testimony that she will give from the witness stand, let you deliberate on it, and return a verdict that your conscience will let you live with."

■ The first specification of error involves Mrs. Steiner's testimony, the statement being, "That the trial court erred in failing to allow a non-expert witness express her opinion regarding the sanity of the defendant."

Mrs. Fred Steiner testified that she adopted the defendant when he was between five and six years of age, and in an orphan's home. She said that he could not learn readily, and for several years attended a school for the mentally retarded. She was then asked by defense counsel:

"Q. Would you tell the court and jury, then, in your opinion his reactions, his characteristics, his learning capacity between the ages of six and twelve?

"Mr. Brown: Now, your Honor, we are going to object to the form of the question unless counsel can show she is qualified to give an opinion.

"The Court: Yes, the question is, I believe, your plea is insanity at the time of the commission of the offense.

"Mr. Harris: Yes, sir, if there was an offense."

The court ruled that the testimony would be restricted to that time, or approximately thereabouts, and that the witness should state facts and circumstances rather than giving an opinion. But witness kept giving her opinion, as: "It wasn't long until it appeared to us that he was very abnormal and it appeared—" "He acted abnormally". The court sustained objections to all such answers. She wanted to tell what doctors had told her. Such testimony was ruled out as hearsay. She did testify that defendant was in 1956 declared insane and was confined to the Wichita Falls State Hospital.

Witness testified to hearing from the defendant several weeks prior to January 16, 1959 from Omaha, Nebraska, and prior to that heard from him from Chicago.

We fail to find from a careful reading of the testimony of Mrs. Steiner where the court erred in his ruling on the admission of evidence. The defense was not present

insanity, but insanity at the time of the commission of the offense, if it was committed. The Court sought to limit her to the recounting of facts and circumstances involving the defendant around April 5, 1958, the date of the commission of the crime. Her proposed testimony, ruled out, related to conditions existing an undisclosed number of years prior to the commission of the offense. Of course, having recited circumstances, then witness would have something on which to support a conclusion, but without supporting circumstances, the witness could not state a conclusion.

In the body of the opinion in Lee v. State, 30 Okl.Cr. 14, 234 P. 654, 655, this Court said:

"To establish a legal defense on the ground of insanity, there must be a showing that at the time of the commission of the deed the person accused was laboring under such a defect of reasoning, from some disease of the mind, as not to know the nature and quality of the act he was doing, or, if he did know, that he did not know that what he was doing was wrong."

See also Lac Coarce v. State, Okl.Cr., 309 P.2d 1113.

The defendant William Randall Steiner testified in his own defense. He said that he had been committed to the Wichita State Hospital in about 1956 but was not sure of the date. He said he soon ran away and was returned several times. He said he did not recall being in Tulsa on April 5, 1958, but it was possible that he was there. He said he finished the third grade in school, but he had read quite a bit. He admitted he had served a ninety day jail sentence in Denver several years ago. He did not remember seeing the prosecuting witness, Whitman, prior to the preliminary hearing in the within prosecution. He remembered being sent to the Vinita Hospital prior to his trial, and stayed there thirteen days and said he was well treated.

■ The next specification of error advanced concerns the purported testimony of Frank Rowell, it being stated: "When

an attorney who formerly represented the defendant enters the court room during the course of the trial unaware that he will be called as a witness, the trial court erred in refusing the attorney's testimony."

The record, as argued by the Attorney General, merely reveals that counsel proposed to call Mr. Frank Rowell, who had not been subpoenaed as a witness, and it came to the attention of the court that the proposed witness had been in the court room in violation of the rule which had been invoked at the request of counsel for defendant, and the court held that consequently the proposed witness would not be allowed to testify. It is noted that counsel did not make any objection or reserve any exception to the ruling of the court. He merely stated, "Very well, the defendant rests."

In Teague v. State, 58 Okl.Cr. 239, 52 P.2d 91, 92, this Court said:

"Errors occurring during a trial, unless fundamental or jurisdictional, will not be considered on appeal unless they were objected to at the time, and an exception saved to an adverse ruling, and assigned as error in the motion for a new trial and the petition in error."

█ Counsel states alleged circumstances surrounding the proposed calling of Frank Rowell as a witness that are not disclosed by the record. When the court refused to permit Rowell to testify, counsel should have called to the attention of the court the circumstances that he felt would have excluded witness from the rule, and excepted to any adverse ruling of the court. In that way the court might have made a different ruling. At all events, there would have been a record to support allegations of error. The general rule is that where the court orders witnesses to be sworn and excluded from the court room during the taking of testimony and a witness wilfully violates such rule, it is within the discretion of the court to allow or exclude the testimony of the witness. Woolridge v. State, 93 Okl.Cr. 245, 225 P.2d 1028; Gorum v. State, 67 Okl.Cr. 75, 92 P.2d 1086.

Under the state of the record, we cannot say that the court abused its discretion.

This ended the testimony for the defense, and the State called in rebuttal Dr. George Kleinschmidt.

Dr. Kleinschmidt testified that he was a physician, specializing in psychiatry, and was employed at the Eastern State Hospital at Vinita. He had charge of the clinical division. He said he knew the defendant Steiner; that Steiner was sent to his hospital by court order for observation and examination; that he examined the defendant and had last seen him about a week previous to the time he was testifying. Witness said it was their opinion that defendant was not psychotic or insane; that he knew right from wrong, was capable of making a competent witness in his own behalf, and aiding his counsel in his defense. It was the opinion of witness that defendant was sane on April 5, 1958, based on the questions of defendant and defendant's recalling events and sequences.

This concluded the evidence, and the court overruled motion of the defendant for a directed verdict.

█ Counsel for defendant next argues that the trial court erred in failing to instruct the jury on the law of circumstantial evidence and in failing to sustain defendant's motion for a directed verdict of acquittal in that all the evidence was circumstantial.

We have carefully read the instructions given the jury by the court and find that the record fails to show that any instruction given was excepted to, nor were other and different instructions requested. Counsel in his motion for new trial failed to point out specifically in what respect the court erred in giving the instructions he did. We find no error in the instructions given.

█ As to the contention that the court should have given an instruction on circumstantial evidence, it appears that the State did not rely exclusively upon circumstantial evidence. It has been noted that the defendant was positively identified by the

prosecuting witness as being the person who was present and examining the missing stamps and which were found missing after the defendant departed. There were many circumstances corroborating the identification of defendant by the prosecuting witness. This Court has many times said that where the State does not rely wholly upon circumstantial evidence for a conviction, it is not error for the court to fail to instruct thereon. Where counsel feels that a particular instruction should be given, he should not remain inarticulate, but should suggest, or, better still, aid the court in its consideration by offering a prepared instruction concerning counsel's idea of a correct instruction. To fail in this regard is to permit a court to commit error and then seek to take advantage of it. This may not be permitted unless the error is clear and fundamental. Matin v. State, Okl.Cr., 333 P.2d 585; Presnell v. State, 71 Okl.Cr. 162, 109 P.2d 834.

We have since this opinion was announced on November 3, 1959, reconsidered the whole case, and the above remains the opinion of the Court, except that we have, by reason of the apparent retardation of the defendant and the refusal of the court to permit the development of such facts by defense counsel when the mother was testifying, decided to reduce the penalty assessed of three years confinement in the State Penitentiary, to 18 months confinement in the State Penitentiary; and the judgment as so modified is affirmed.

NIX and BRETT, JJ., concur.