STATE OF NORTH CAROLINA v. JOE LEWIS WHITE

No. 23

(Filed 4 November 1976)

1. Criminal Law § 75— voluntariness of confession — consideration of entire record

The ultimate test of the admissibility of a confession is whether the statement made by the accused was in fact voluntarily and understandingly made, and compliance with the technical procedural requirements of *Miranda*, standing alone, will not suffice; rather the controlling question of whether the alleged confession was voluntarily and understandingly made must be found from a consideration of the entire record.

2. Criminal Law § 75— subnormal mentality — illiteracy — effect on voluntariness of confession

Subnormal mentality is a factor to be considered in determining the voluntariness of a confession, but this condition, standing alone, does not render an otherwise voluntary confession inadmissible. It follows that inability to read or write does not render an otherwise voluntary confession inadmissible, since illiteracy does not preclude understanding or a free exercise of the will.

3. Criminal Law § 75— Miranda warnings given — lapse of time — statement made — voluntariness

Though 45 minutes elapsed between the time defendant was warned of his constitutional rights and the time he made his first statement to officers and 30 minutes elapsed between the second warning and second statement, there was no showing that defendant was unaware of his constitutional rights because of the lapse, since the lapse was extremely short, the warnings were given in the same place by the same officers on each occasion, and, though defendant was illiterate, there was no apparent emotional condition or lack of intellectual ability which would have prevented his making a voluntary statement.

4. Arson § 1; Homicide § 8— murder in perpetration of arson — defense of intoxication — specific intent not element of crime

Voluntary intoxication is a defense to crimes which require a showing of a specific intent. Since specific intent is not an essential element of the crime of common-law arson, the crime for which defendant was indicted, voluntary intoxication is not a defense to that crime; moreover, since voluntary intoxication is not a defense to a charge of arson, it likewise is not a defense to a charge of felony-murder having as its underlying felony the crime of arson, and the trial court therefore properly refused to give defendant's requested instructions on voluntary intoxication.

5. Criminal Law § 26; Homicide § 31— felony-murder — separate punishment for felony — error

Where defendant was indicted for first degree murder and arson, but proof of the arson charge was an essential and indispensable

element in the State's proof of felony-murder, the trial court erred by imposing additional punishment on the verdict of guilty of arson.

6. **Constitutional Law § 36; Homicide § 31— first degree murder — life imprisonment substituted for death sentence**

   Sentence of life imprisonment is substituted for the death penalty imposed for a first degree murder committed prior to the 1974 enactment rewriting G.S. 14-17 and after the interpretation of G.S. 14-17 (1969) in *State v. Waddell*, 282 N.C. 431 (decided 18 January 1973).

APPEAL by defendant from *McLelland, J.*, 24 November 1975 Special Session ROBESON Superior Court.

Defendant was indicted in separate bills of indictment for first-degree murder and arson.

This case has previously been before this Court and a new trial was awarded. *State v. White*, 288 N.C. 44, 215 S.E. 2d 557. Upon defendant's motion for a change of venue the case was removed to Robeson County for trial.

The State offered evidence which tended to show that deceased, Mose Watson, had testified against defendant's brother in cases charging him with burglary and robbery. Thereafter defendant made numerous statements of his intentions to kill Watson. On the night of 19 May 1973, after determining that Watson was home, defendant poured gasoline on and set fire to the Watson home. Watson was burned to death in his home.

The State offered evidence of confessions which will hereinafter be more fully discussed.

Defendant denied that he had committed the charged crimes. His testimony and the testimony of his other witnesses indicated that at the time of the alleged crimes he was at his parents' home in a highly intoxicated condition.

The jury returned verdicts of guilty as to each charge and judgments imposing the death penalty were entered in each case.

*Attorney General Edmisten by Special Deputy Attorney General William F. O'Connell, for the State.*

*J. Robert Gordon for the defendant appellant.*

BRANCH, Justice.

By his Assignments of Error Nos. 3 and 4 defendant contends that the rulings of the trial judge admitting into

evidence inculpatory statements made by him to police officers constituted prejudicial error. Only one *voir dire* hearing was held as to the two separate statements made by defendant and we elect to consider these assignments of error jointly.

Detective L. E. Smith of the Laurinburg, North Carolina, Police Department testified as a State's witness. When it became apparent that the officer was about to testify concerning inculpatory statements made by defendant, counsel objected and Judge McLelland properly excused the jury and conducted a *voir dire* hearing as to the admissibility of this evidence.

On *voir dire*, Detective Smith testified that on 3 May 1974 he and SBI Agents Dowdy and Currin were transporting defendant to North Carolina from Paterson, New Jersey, by automobile. Defendant had been given two extradition hearings in Paterson, New Jersey, at which times he was advised of the charges pending against him in North Carolina. After approximately an hour of travel, defendant was fully warned of his constitutional rights as mandated by *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602. Defendant stated that he fully understood his rights and that he did not desire a lawyer to be present during questioning by the police officers. In response to ensuing questions defendant proceeded to make an inculpatory statement concerning the charges pending against him. Detective Smith specifically stated that on this occasion defendant was not threatened and no one promised him anything in exchange for the statements made. He did not hear SBI Agent Dowdy tell defendant that Delores Austin had made a statement accusing him of burning Mose Watson's house. Neither did he hear Agent Dowdy tell defendant that he would talk to the solicitor in his behalf or that things would go easier for defendant if he made a statement.

The witness related that on 4 May 1974 defendant and Delores Austin were questioned at the police station in Laurinburg, North Carolina. Both Delores Austin and defendant were warned of their constitutional rights at that time. Defendant was also read a waiver of rights which contained an acknowledgment that he understood his rights and that no promises or threats had been made by the officers and that he was willing to make a statement without the presence of a lawyer. Defendant then stated that he understood his rights and he did not desire a lawyer at that time.

State v. White

On cross-examination Detective Smith admitted that he knew defendant could not write and that a period of about 45 minutes elapsed between the giving of the warning and the interrogation when the statement was made on 3 May 1974. He testified that defendant's statement on 4 May 1974 was made about 30 minutes after he was warned of and had waived his constitutional rights. Officer Smith stated that although defendant was uneducated, he appeared to fully comprehend what was being said.

Defendant testified that on the trip from Paterson, New Jersey, SBI Agent Dowdy told him that Delores Austin had made a statement to the effect that she and defendant killed Mose Watson. Agent Dowdy also told him that if he would enter a plea of guilty he (Dowdy) would talk to the solicitor in his behalf and would see about getting a lawyer for him. Dowdy said that things would be better for defendant and Delores if defendant would make a statement. In response to these promises by SBI Agent Dowdy, he then made a statement. He testified that Detective Smith did not warn him of his constitutional rights and that he never told anyone that he would waive his right to an attorney or that he wished to proceed without one. On cross-examination, he stated: "As far as I remember, the officer could have advised me exactly as he testified." He also admitted that he was not threatened or physically attacked by anyone.

At the conclusion of the *voir dire* hearing Judge McLelland found facts consistent with the State's evidence concerning the statement made on 3 May 1974. He then concluded and ruled:

> I conclude from these findings that the defendant waived his rights to remain silent and to have counsel present before and during interrogation and that this waiver was freely, voluntarily and understandingly made.

> The motion to suppress evidence of that statement is therefore denied.

The trial judge also found facts consistent with the testimony of the State's witness concerning the statements allegedly made on 4 May 1974 and entered the same conclusions and ruling as above quoted.

The jury returned to the courtroom and Detective Smith, in substance, testified that on the trip from Paterson, New

Jersey, defendant stated that he did pour gas on Mose Watson's house and set it on fire. However, he said that he did this to frighten Mose Watson so that he would not testify against defendant's brother and he did not know that Mose was inside the house. The witness further testified that on the following day (4 May 1974) Delores Austin and defendant were brought to an interrogation room at the Laurinburg Police Station and after both Delores Austin and defendant had again been warned of their constitutional rights, Delores Austin, in essence, stated that defendant had planned for some time to kill Mose Watson; that he ascertained that Mose Watson was in his home on the night of 19 May 1973; and that he poured gasoline on the Watson house and thereafter there was an explosion and a fire. As defendant ran from the flaming house, he said, "I told you I was going to get him." Defendant was within four feet of Delores Austin while she made this statement. He was asked if he listened to her statement and whether he agreed with what she said. He replied "that he had heard and understood, and that he did not disagree with any of it."

[1]   It is well settled that the trial judge's findings of fact after a *voir dire* hearing concerning the admissibility of a confession are conclusive and binding on the appellate courts when supported by competent evidence. *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453, *death sentence vacated,* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2278. This is so even when the evidence is conflicting. *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363. Nevertheless the conclusions of law drawn from the facts are reviewable by the appellate courts. The ultimate test of the admissibility of a confession is whether the statement made by the accused was in fact voluntarily and understandingly made. Compliance with the technical procedural requirements of *Miranda,* standing alone, will not suffice and the controlling question of whether the alleged confession was voluntarily and understandingly made must be found from a consideration of the entire record. *State v. Pruitt,* 286 N.C. 442, 212 S.E. 2d 92.

Here there was plenary evidence that the *Miranda* requirements were fully met and there was ample, competent evidence to support the trial judge's findings. However, defendant contends that a consideration of all the circumstances discloses as a matter of law that defendant did not voluntarily and understandingly make the alleged inculpatory statements. He argues

---

State v. White

---

that defendant was unable to read and write and, therefore, the State's evidence was not sufficient to permit a finding that there was a voluntary waiver of his constitutional rights.

[2] This Court has recognized that subnormal mentality is a factor to be considered in determining the voluntariness of a confession but that this condition, standing alone, does not render an otherwise voluntary confession inadmissible. *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666. It follows, and we so hold, that inability to read or write does not render an otherwise voluntary confession inadmissible. Illiteracy does not preclude understanding or a free exercise of the will.

[3] Defendant next attacks the admission of both the statements because a period of approximately 45 minutes elapsed between the giving of the warnings and the making of the first statement and because a period of 30 minutes elapsed between the giving of the warnings and the making of the second statement. Such an argument was advanced in *State v. McZorn,* 288 N.C. 417, 219 S.E. 2d 201. Rejecting this contention Chief Justice Sharp, speaking for the Court, stated:

> Many courts have considered the question whether *Miranda* warnings must be repeated at subsequent interrogations when they have been properly given at the initial one. *See* Note, The Need to Repeat Miranda Warnings at Subsequent Interrogations, 12 Washburn Law Journal 222 (1973), where the cases are collected and analyzed. The consensus is that although *Miranda* warnings, once given, are not to be accorded "unlimited efficacy or perpetuity," where no inordinate time elapses between the interrogations, the subject matter of the questioning remains the same, and there is no evidence that in the interval between the two interrogations anything occurred to dilute the first warning, repetition of the warnings is not required. . . . However, the need for a second warning is to be determined by the "totality of the circumstances" in each case. . . . "[T]he ultimate question is: Did the defendant, with full knowledge of his legal rights, knowingly and intentionally relinquish them?" . . . [Citations omitted.]

> Courts have included the following factors, among others, in the totality of circumstances which determine whether the initial warnings have become so stale and remote that there is a substantial possibility the individual

was unaware of his constitutional rights at the time of the subsequent interrogation: (1) the length of time between the giving of the first warnings and the subsequent interrogation. *See State v. Gilreath,* 107 Ariz. 318, 487 P. 2d 385 (1971) (second and third interrogations occurred 12 and 36 hours respectively after the first; repeated warnings not required) (applying *Escobedo* principles) ; *Watson v. State,* 227 Ga. 698, 182 S.E. 2d 446 (1971) (7 hour interval held not to require repeated warning) ; . . . (2) whether the warnings and the subsequent interrogation were given in the same or different places, . . . (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers. *Id;* (4) the extent to which the subsequent statement differed from any previous statements; . . . (5) the apparent intellectual and emotional state of the suspect. . . . [Citations omitted.]

In instant case the lapse of time was extremely short and the warnings were given in the same place by the same officers on each occasion. Although defendant was illiterate, there was no apparent emotional condition or lack of intellectual ability which would have prevented his making a voluntary statement. We hold that the totality of the circumstances does not show a substantial possibility that defendant was unaware of his constitutional rights because of the lapse of time between the warnings and his waiver and the statements made by him.

We note that the trial judge did not expressly conclude that the defendant voluntarily and understandingly made the confessions. However, when considered with the findings of fact his conclusion that "defendant waived his rights to remain silent and to have counsel present before and during interrogation and that he did so freely, voluntarily and understandingly" is tantamount to a conclusion that the confessions were understandingly and voluntarily made.

The trial judge correctly admitted the inculpatory statements made by defendant on 3 May 1974 and 4 May 1974.

Defendant argues that the trial court erred in refusing to instruct the jury as to the defense of voluntary intoxication and as to lesser included offenses of the murder charge.

At the conclusion of the evidence and prior to the arguments of counsel, defendant presented to the court written

State v. White

requests for special instructions to the jury. Those instructions, in pertinent part, were as follows:

> The defendant has raised the defense that he was in a state of voluntary intoxication at the time the alleged homicide took place. Generally, voluntary intoxication is not a legal excuse for crime. However, if you find that the defendant was intoxicated, you should consider whether this condition affected his ability to formulate the specific intent which is required for a conviction of arson. In order for you to find the defendant guilty of arson, you must find, beyond a reasonable doubt, that he had the ability to formulate the specific intent, the wilful intent to burn the dwelling house of Mose Watson. If, as a result of intoxication, the defendant did not have the required specific intent, you must find the defendant not guilty of arson.

> I instruct you that if you find the defendant not guilty of arson, you must then find him not guilty of murder in the first degree, under the felony-murder rule because the death would not have resulted from the commission or the attempted commission of a felony. I further instruct you that if you find the defendant did not have the specific intent to commit arson because of his intoxication he could not be guilty of murder in the first degree because it would follow that he did not have the specific intent required to commit first degree murder. The law does not require any specific intent for the defendant to be guilty of the crime of manslaughter. Thus the defendant's intoxication can have no bearing upon your determination of his guilt or innocence of manslaughter.

> \*   \*   \*

> So, therefore, I charge you that if you find from the evidence that the defendant was so intoxicated he could not formulate the specific intent required for a conviction of arson and first degree murder, it would be your duty to find him not guilty of arson and first degree murder, but you may find him guilty of voluntary manslaughter or involuntary manslaughter as I have just defined those crimes to you.

As to the first-degree murder charge, the State elected to proceed solely under the felony-murder theory based on the underlying felony of arson. The jury was instructed as follows:

> . . . Therefore, I charge that if you find beyond a reasonable doubt that the defendant burned the dwelling of Mose Watson when it was inhabited by Mose Watson; that he [did] so maliciously, that is intentionally and without lawful excuse or justification, your duty is to return a verdict that he is guilty of arson, a felony.

> And if you further find beyond a reasonable doubt that Mose Watson's death was proximately caused by that act of arson, on the part of the defendant, it is your duty to find him guilty also of first-degree murder. I instruct you that if you do not find the defendant guilty of the crime of arson, you must find him not guilty of murder as well.

[4] Voluntary intoxication is a defense only to those crimes which require a showing of a specific intent. *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238; *State v. Bunn,* 283 N.C. 444, 196 S.E. 2d 777; *State v. Propst,* 274 N.C. 62, 161 S.E. 2d 560. In this case defendant was indicted for common-law arson, which is defined as the wilful and malicious burning of the dwelling house of another person. *State v. White,* 288 N.C. 44, 215 S.E. 2d 557; *State v. Arnold,* 285 N.C. 751, 208 S.E. 2d 646. As we stated on the prior appeal of this case:

> . . . For a burning to be "wilful and malicious" in the law of arson it must simply be done "voluntarily and without excuse or justification and without any bona fide claim of right. An intent or animus against either the property itself or its owner is not an element of the offense" of common law arson.

Specific intent is not an essential element of the crime of common-law arson. *State v. McLaughlin, supra;* 5 Am. Jur. 2d, Arson and Related Offenses § 10. Therefore, voluntary intoxication is not a defense to that crime. Since voluntary intoxication is not a defense to a charge of arson, it likewise is not a defense to a charge of felony-murder having as its underlying felony the crime of arson.

We, therefore, hold that the trial judge correctly refused to give the instructions proffered by defendant. This assignment is overruled.

State v. White

---

[5]　Defendant also contends that the trial judge erred by imposing additional punishment on the verdict of guilty of arson.

The State proceeded solely on the theory that Mose Watson's death was proximately caused by defendant's perpetration of the felony of arson. Proof of the arson charge was an essential and indispensable element in the State's proof of felony-murder and as such affords no basis for additional punishment. *State v. McLaughlin, supra; State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214; *State v. Thompson, supra.* We, therefore, arrest the judgment in the arson case.

In his final assignment of error defendant attacks the imposition of the death penalty upon the verdicts of guilty of arson and guilty of first-degree murder.

Since we arrest the judgment in the arson case, it is not necessary to reach this question as it relates to the arson charge.

[6]　In *Woodson v. North Carolina,* ___ U.S. ___ , 49 L.Ed. 2d 944, 96 S.Ct. 2978, the United States Supreme Court invalidated the death penalty provisions of G.S. 14-17 (Cum. Sup. 1975). By virtue of the provisions of 1973 Sess. Laws, c. 1201, § 7 (1974 Session), a sentence of life imprisonment is substituted in lieu of the death penalty for crimes of first-degree murder committed *after* its effective date of 8 April 1974. However, in the murder case *sub judice* the offense was committed prior to that date. We have held that the appropriate sentence for one convicted of first-degree murder and sentenced to death *prior* to the 1974 enactment and *after* the interpretation of G.S. 14-17 (1969) in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19 (decided 18 January 1973), is life imprisonment. *State v. Davis,* 290 N.C. 511, 227 S.E. 2d 97. For the reasons stated in *Davis,* we substitute a sentence of life imprisonment in lieu of the death penalty imposed in this case.

This case is remanded to the Superior Court of Robeson County with directions (1) that the presiding judge, without requiring the presence of defendant, enter a judgment imposing life imprisonment for first-degree murder of which defendant has been convicted; and (2) that in accordance with this judgment the clerk of superior court of Robeson County issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the clerk furnish to the de-

fendant and his attorney a copy of this judgment and commitment as revised in accordance with this opinion.

In 74CR3313 (arson)—Judgment arrested.

In 74CR2007 (first-degree murder)—No error in the verdict. Death sentence vacated.