Kirk Wayne BROGIE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–553.

Court of Criminal Appeals of Oklahoma.

Jan. 2, 1985.

Rehearing Denied March 11, 1985.

Joel Barr, James I. English, III, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Kirk Wayne Brogie was convicted of first degree felony murder, and was sentenced to death, in Cleveland County District Court, Case No. CRF-79-640. On appeal, he presents fifteen assignments of error.

The conviction arose out of the disappearance of Ms. Leslie Gail Buford on the evening of August 23, 1979. It appears that appellant and three passengers, John Webster, David Owens and David Blackwell, stopped to assist the woman along Interstate Highway 40 in Oklahoma City. One of the tires on her car was flat, and she did not have a spare. It was agreed that appellant would drive the woman to a telephone, while the other men remained with the disabled vehicle.

The lady was unable to reach her boyfriend, and appellant agreed to give her a ride home after picking up his friends. However, after going back for his companions, appellant drove to a remote part of Oklahoma City located within Cleveland County. En route, knives were pulled on the woman; she was undressed and repeatedly sexually assaulted; jewelry was removed from her person, and her purse was rifled.

After stopping the car, appellant also assaulted the victim. Eventually, the woman was forced to kneel in the gravel roadway, and her throat was slit. The victim was then stabbed repeatedly, and struck several times on the head with a piece of asphalt. Her car was taken to a remote location near an Oklahoma City lake and burned.

The body was not discovered until September 5, 1979, and was badly decomposed. However, the medical evidence was consistent with blows to the head with the rock, and numerous knife cuts to the body.

■ As his first assignment of error, appellant complains of the failure to afford him a preliminary hearing on the bill of particulars. However, this Court has firmly rejected the necessity of such a hearing in a capital case. See, *Stafford v. State*, 669 P.2d 285 (Okl.Cr.1983); *Stafford v. State*, 665 P.2d 1205 (Okl.Cr.1983); *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983); and *Brewer v. State*, 650 P.2d 54 (Okl.Cr.1982).

We see no reason to depart from that holding.

Appellant's second assignment of error is that three photographs, State's Exhibits 66, 67 and 68, were improperly admitted into evidence. However, the record reflects that those photographs were in fact excluded by the trial judge at the request of defense counsel.

■ As his third assignment of error, appellant complains of the refusal of the trial judge to appoint a psychiatrist to assist defense counsel. Here again, we have repeatedly stated that there is neither constitutional mandate nor statutory authority for the appointment of experts to assist an accused. See, e.g., Ake v. State, 663 P.2d 1 (Okl.Cr.1983) cert. den., —— U.S. ——, 104 S.Ct. 1591, 80 L.Ed.2d 123; Cox v. State, 644 P.2d 1077 (Okl.Cr.1982); Goforth v. State, 644 P.2d 114 (Okl.Cr.1982); Maghe v. State, 620 P.2d 433 (Okl.Cr.1980); and Irvin v. State, 617 P.2d 588 (Okl.Cr.1980). We observe that appellant was examined at a state mental facility prior to trial.

■ Under his fourth assignment of error, appellant contends that the evidence was insufficient to support the finding in the penalty phase of trial that the murder was "especially heinous, atrocious, or cruel," 21 O.S.1981, § 701.12(4). This contention is without merit.

■ In assessing the sufficiency of the evidence of an aggravating circumstance, it must be determined whether there was any competent evidence to support the State's charge, in other words, whether there was any evidence from which the jury could find that the aggravating circumstance existed. Cf. Johnson v. State, 665 P.2d 815, 816 (Okl.Cr.1982) (trial judge must apply a similar standard in ruling on a motion for directed verdict in the sentencing stage). In the application of this aggravating circumstance, "heinous" means "extremely wicked or shockingly evil"; "atrocious" means ·"outrageously wicked and vile;" and "cruel" imports a design "to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others." Stafford v. State, 665 P.2d at 1217.

The evidence, viewed in the light most favorable to the State, see generally Renfro v. State, 607 P.d 703 (Okl.Cr.1980), was clearly sufficient. The State secured the incorporation of the first stage evidence in the penalty phase by jury instruction. The State relied heavily in the first phase on the testimony of John Webster. According to Webster, the appellant was one of the men who threatened the victim with knives in the car. When the woman pleaded that she not be harmed, appellant put his knife to her throat and warned, "One more word and you get it now, baby."

After the car stopped, appellant was the one who ordered the victim to get on all fours in the gravel road. Appellant handed his knife to David Owens,[1] and nodded his head up and down. As Owens walked over to the victim, she asked what they were going to do to her; Owens ordered her to be quiet. Webster turned away as Owens put the knife under the victim's throat; when he turned back, the victim lay on the ground bleeding heavily from the throat area.

Appellant and Blackwell then began stabbing the victim rapidly, all over. When one of the others remarked that Webster had not joined in the stabbing, appellant held his knife out to Webster, and said, "Do it or you'll be with her." After stabbing the woman twice, Webster went to the

---

1. The transcript reads in pertinent part as follows:

Q. And what happened at that time?
A. That's the time that Kirk Brogie held out the knife to Owens and shook his head yes.

\* \* \* \* \*

Q. (Mrs. Huff) Mr. Webster, can you demonstrate for the jury in what way Mr. Brogie shook his head?

A. It was up and down.
Q. And where was the knife at this time when he did that?
A. It was in his hand pointing towards Owens.
Q. And who did he give it to?
A. David Owens.

car and vomitted; when he looked back, appellant and Blackwell were stabbing the victim again.

Appellant instructed that the victim be dragged into the weeds. When Blackwell noticed that the woman was not dead, he and Owens struck her on the head with a piece of asphalt. Her body jumped after one of the blows, and she was struck a third time. Afterwards, appellant stated that "if she wasn't dead yet, that she would die by morning of exposure and bleed to death."

At appellant's direction, the men drove the victim's car to the spot at which it was later discovered, and set it afire with gasoline. Later, when Blackwell inquired whether there was anything wrong with the appellant, he stated that he was "just planning the next one."

According to the pathologist, the throat is a tender area, and a cut would cause a great deal of pain before the victim became unconscious. It would take at least several minutes for enough blood to pump out to cause shock and unconsciousness. The person could linger for a matter of minutes or for an hour or more, depending upon the vessels cut and the depth of the wound. In this case, the cut was not deep enough to have nicked the bones at the back of the victim's throat.

■ The evidence was clearly sufficient to support the aggravating circumstance. Appellant's further contention under this assignment of error, that the statutory aggravating circumstance is unconstitutional due to inconsistent application in other previous cases, is not well taken. Appellant concedes the facial validity of the aggravating circumstance. *Jones v. State*, 660 P.2d 634 (Okl.Cr.1983). This concession, coupled with our finding that the aggravating circumstance was properly applied to appellant's case, is fatal to appellant's contention, in our view. In effect, appellant urges the insufficiency of the evidence in other cases, a contention which affords no ground or relief for appellant.

■ As his fifth assignment of error, appellant argues that evidence of the burning of the victim's car, and a subsequent plot by appellant and Blackwell to kill Owens, was improper other crimes evidence. This contention is without merit. The burning of the car was part of the entire transaction surrounding the victim's death, and was properly admitted. See *Blackwell v. State*, 663 P.2d 12, 15 (Okl.Cr.1983).

■ The plot to shoot Owens was admissible under *Wills v. State*, 636 P.2d 372 (Okl.Cr.1981). The plot was hatched during the ten to twelve day period after the crime, and was spawned by the fear that Owens was about to go to the police. Evidence of efforts by the accused to suppress or destroy evidence, for example, by attempting to influence, bribe or cause the absence of a witness at trial, is admissible as a circumstance tending to show guilt.

■ We find no violation of *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), in the use of this evidence. Pretrial notice of intent to use the burning of the car at trial was not required, since it was part of the res gestae. Moreover, the record suggests that the State was not aware of the evidence in time to have afforded pretrial notice. See *Wills v. State*, supra. The transcript supports appellant's assertion in his brief that John Webster "suddenly volunteered" the information in response to an unrelated question by the prosecutor. Defense counsel did not object to the evidence, nor did he request a limiting instruction. Id.

As his sixth assignment of error, appellant contends that the death penalty is unconstitutional due to the absence of sufficient particularized guidance in the consideration of mitigating circumstances. He does not indicate the additional guidance which should be afforded.

■ The jury was instructed that it must assess punishment at life in prison if the aggravating circumstances did not outweigh the mitigating, and the judge submitted eight minimum mitigating circumstances for their consideration. See *Cha-*

*ney v. State,* 612 P.2d 269 (Okl.Cr.1980). Specific standards for the balancing of the aggravating and mitigating circumstances are not constitutionally required. See *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983), Note 13. See also *State v. Jordan,* 137 Ariz. 504, 672 P.2d 169 (1983).

█ As his seventh assignment of error, appellant argues that the judge improperly excluded a juror for cause based on scruples against the infliction of the death penalty. This is not well taken.

█ A juror may be excluded for cause if he is unwilling to consider all the penalties provided by state law, and is irrevocably committed prior to trial to vote against the penalty of death regardless of the circumstances that might emerge in the course of the proceedings. *Coleman v. State,* 670 P.2d 596 (Okl.Cr.1983). The transcript reveals the following questions and answers:

THE COURT: Do you have any fixed opinions on the subject of the death penalty, Miss Divine?

MISS DIVINE: Yes, I do.

THE COURT: You do have?

MISS DIVINE: Yes.

THE COURT: All right. Then if you will answer the next question. In the proper case and if the Defendant were found guilty by a unanimous Jury beyond a reasonable doubt, is [sic] there facts that you can conceive of which would permit you to consider imposition of the death penalty?

MISS DIVINE: I could not do that.

THE COURT: There would be no case at all—

MISS DIVINE: No case.

THE COURT: —in which you could consider it?

MISS DIVINE: No case.

THE COURT: I will excuse you, Miss Divine. (Tr. 56–57).

█ We find that it was "unmistakably clear" that the juror was unable to serve within the meaning of *Coleman,* supra and *Witherspoon v. Illinois,* 391 U.S.

510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Appellant's contention that the exclusion of the juror denied him a jury comprised of a representative cross-section of the community is without merit. See *Lockett v. Ohio,* 438 U.S. 586, 596–597, 98 S.Ct. 2954, 2960, 57 L.Ed.2d 973 (1978); and *Chaney v. State,* supra, 612 P.2d at 274. Finally, his assertion that the judge improperly refused to allow defense examination of the juror is not well taken. The manner and extent of examination of prospective jurors rests largely in the sound discretion of the trial court and, absent a clear abuse of discretion, his or her ruling will not be disturbed. *Phillips v. State,* 650 P.2d 910 (Okl.Cr. 1982). The defense request for additional voir dire was based on the incorrect assumption that the juror had not made "unmistakably clear" her bias. *People v. O'Brien,* 71 Cal.2d 394, 79 Cal.Rptr. 313, 456 P.2d 969 (1969), relied upon by appellant, is distinguishable for the same reason.

█ As his eighth assignment of error, appellant contends that the judge failed to properly instruct the jury on felony murder. He first complains that the specific intent element for one of the underlying felonies, Kidnap, was not covered in the instructions. He concedes that he did not specifically object on this ground, see *Pumpkin v. State,* 295 P.2d 819 (Okl.Cr. 1956); and *Hess v. State,* 9 Okl.Cr. 516, 132 P. 505 (1913), nor did he request such an instruction, see *Steiner v. State,* 349 P.2d 56 (Okl.Cr.1959). However, he says that the defect was fundamental.

However, an identical assignment of error was rejected in the appeal of the accomplice, David Blackwell. See *Blackwell v. State,* supra, 663 P.2d at 16. We held that such a defect did not constitute fundamental error.

█ Appellant also complains that the judge erred in advising the jury that homicide in the commission of *attempted* armed robbery is felony murder, and in failing to instruct that the jury must unanimously agree which of the several alleged underlying felonies formed the basis for

their verdict of guilt. Similar arguments were rejected by this Court in *James v. State*, 637 P.2d 862 (Okl.Cr.1981). The legislature intended that attempted armed robbery be included in the felony murder statute. Moreover, where the State alleges and proves alternative factual basis for a finding of first degree murder, there is no error even though the judge fails to instruct the jury to unanimously decide which of the alternative basis existed. Id.

As his ninth assignment of error, appellant asserts that the judge gave Allen instructions in the penalty hearing which did not comply in form and content with the guidelines of this Court. This assignment is without merit. He insists that the judge's inquiry concerning the numerical division of the jury failed to conform to the guidelines and statute. However, a judge may call the jury into the courtroom after .they have been deliberating for some time to ascertain the probability of reaching a verdict, so long as he or she says nothing to coerce an agreement or indicate his or her feelings in the case. See *Gatlin v. State*, 553 P.2d 204 (Okl.Cr.1976). We find no error in this regard. As the judge dismissed the jury for the evening on the first day of deliberation, she "ask[ed] that [they] arrive at a verdict." However, this was not coercive in effect, since deliberations continued throughout the next day.

At 11:55 A.M. on the second day, the judge delivered an Allen instruction which, though emphasizing the importance of reaching a verdict if possible, cautioned the jury that "[t]his does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the importance of arriving at a decision." We find that it sufficiently complied with prior decisions of this Court governing the content of such instructions. See *Sartin v. State*, 637 P.2d 897 (Okl.Cr.1981); *Miles v. State*, 602 P.2d 227 (Okl.Cr.1979); *Glaze v. State*, 565 P.2d 710 (Okl.Cr.1977); and *Wilson v. State*, 556 P.2d 1311 (Okl.Cr.1976).

Appellant contends as his tenth assignment of error that a conviction for murder, and particularly a sentence of death, should not be allowed on the mere basis of a felony murder theory. This contention is not well taken. Arguments concerning the wisdom of the felony murder rule in this state should not be addressed to the Court, since the rule is one of statute. 21 O.S.1981, § 701.7(B). Cf. *Cook v. State*, 663 P.2d 20, 21–22 (Okl.Cr.1983) ("[O]ur judicial task is to effectuate the statute as written. The wisdom or desirability of change is solely a matter for the consideration of the legislature.") *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980), is thus distinguishable, for in Michigan, the felony murder rule was not embodied in statute. Moreover, we reviewed and approved the rationale and policy of the felony murder statute in *Hatch v. State*, 662 P.2d 1377, 1384 (Okl.Cr.1983).

That the states have the power to enact felony murder statutes is beyond constitutional challenge. *Lockett v. Ohio*, supra, 438 U.S. at 602, 98 S.Ct. at 2963–2964. Statutes providing the death penalty for felony murder have been upheld against constitutional challenge. See, e.g., *Collier v. State*, 244 Ga. 553, 261 S.E.2d 364 (1979), cert. den., 445, U.S. 946, 100 S.Ct. 1346, 63 L.Ed.2d 781; and *Collins v. State*, 261 Ark. 195, 548 S.W.2d 106 (1977), cert. den., 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158. Of course, it is clear that the Eighth Amendment does not permit the imposition of the death penalty on one who aids and abets a felony in the course of which a murder is committed by others, but who does not himself kill, attempt to kill or intend that a killing take place or that lethal force will be employed. *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 3376–3377, 73 L.Ed.2d 1140 (1982). However, as we stated in *Hatch v. State*, 662 P.2d at 1383, "[w]e do not read Enmund to be an absolute ban on imposition of the death penalty on one who is convicted of first degree murder through the vehicle of the felony murder doctrine." Appellant's per-

sonal culpability is manifest, and we find no basis for questioning the statute.

As his eleventh assignment of error, appellant argues that the trial judge should have submitted an instruction on the lesser included offense of manslaughter in the first degree. He relies upon purported evidence that he was intoxicated on the night in question.

Voluntary intoxication can reduce homicide from murder in the first degree to manslaughter in the first degree, provided it rendered the defendant incapable of entertaining a necessary specific intent to effect death. See *Jones v. State*, 648 P.2d 1251, 1258 (Okl.Cr.1982). When voluntary intoxication is relied upon as an affirmative defense, the defendant must introduce sufficient evidence to raise a reasonable doubt as to his ability to form the requisite criminal intent. See *Norman v. State*, 648 P.2d 1243 (Okl.Cr.1982). Assuming that the rationale for such an instruction encompasses felony murder prosecutions, but see, e.g., *State v. Edwards*, 224 Kan. 266, 579 P.2d 1209 (1978); and *State v. White*, 291 N.C. 118, 229 S.E.2d 152 (1976), the evidence did not support such an instruction in this case.

Appellant relies upon Webster's testimony in the first stage that the men had been attending a birthday party on the evening of the crime, and that he, Webster, had consumed twenty-eight beers. However, the record does not support appellant's assertion that Webster related that the others, including appellant, had consumed the same amount; rather, Webster said that he had no idea how much beer the others consumed. One of the partiers felt that Webster was too drunk to drive; therefore, Webster was encouraged to ride in a car *driven by appellant.* Webster stated that appellant drove normally on the night in question.

Appellant contends as his twelfth assignment of error that the judge should have granted a mistrial after it was discovered that three of the jurors received outside communications. The Assistant District Attorney suggested the nature of the communication when he stated into the record that it was "brought to the attention of the Court the possibility that three of the jurors may have been informed of an acquittal in another trial on the same jury docket."

We find that appellant has failed to establish prejudice from the communications. Cf. *Townley v. State*, 355 P.2d 420 (Okl.Cr. 1959). The contact occurred after completion of deliberations in the first stage, and before the commencement of the penalty phase. The nature of the information received does not appear prejudicial, especially since appellant argues in a later assignment of error that such information should have been allowed to go to the jury in the second stage. This assignment of error is without merit.

As his thirteenth assignment of error, appellant contends that the judge erred in refusing to permit attorneys representing David Blackwell and David Owens to testify in the sentencing hearing that those men were sentenced to life in prison, and acquitted, respectively, in separate proceedings dealing with the same crime. He relies upon the statutory injunction that "evidence may be presented as to any mitigating circumstances" in the sentencing hearing. 21 O.S.1981, § 701.10.

It is clear that an accused must be permitted to submit any evidence in mitigation bearing on his character, prior record and the circumstances of the offense. See *Lockett v. Ohio*, supra; and *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). See also *Chaney v. State*, supra. Whether the results of criminal proceedings against accomplices constitute evidence bearing on the accused's "character, prior record" or "the circumstances of the offense" has not been considered by this Court. However, in *Coulter v. State*, 438 So.2d 336 (Ala.Cr. App.1982), the Alabama Court of Criminal Appeals answered the question in the negative.

As the trial court noted, an alleged accomplice's sentence is a product of the

aggravating and mitigating circumstances applicable to the alleged accomplice. In the sentencing phase of the trial, the fact that an alleged accomplice did not receive the death penalty is no more relevant as a mitigating factor for the defendant than the fact that an alleged accomplice did receive the death penalty would be as an aggravating circumstance against him. Simply put, an alleged accomplice's sentence has no bearing on the defendant's character or record and it is not a circumstance of the offense. Id., at 345. We find this reasoning persuasive. But see *Messer v. State*, 330 So.2d 137 (Fla.1976) (murder defendant entitled to submit evidence of plea bargain and sentence received by accomplice in the sentencing portion of trial). We find no error in the exclusion of the evidence.

■ As his fourteenth assignment of error, appellant contends that the judge erred in refusing to instruct the jury that, if they were unable to reach a unanimous verdict as to punishment within a reasonable time, they would be dismissed, and the judge would enter a sentence of life imprisonment. See 21 O.S.1981, § 701.11. This contention is without merit. See *Davis v. State*, 665 P.2d 1186, 1203 (Okl.Cr.1983); and *Parks v. State*, 651 P.2d 686, 693 (Okl. Cr.1982). See also *State v. Johnson*, 298 N.C. 355, 259 S.E.2d 752 (1979); and *Coulter v. State*, supra, 438 So.2d at 346 (such a statutory injunction "is an instruction for the trial court, not for the jury"). But see *State v. Williams*, 392 So.2d 619 (La.1980). Such an instruction would amount to an invitation to the jury to avoid its difficult duty to pass sentence on the life of an accused. See *Burrows v. State*, 640 P.2d 533, 544 (Okl.Cr.1982).

As his fifteenth and final assignment of error, appellant contends that the death penalty in this case is excessive or disproportionate to the penalty imposed in similar cases. Although conceding that none of the reported decisions under the present death penalty statute involve substantially similar facts, appellant focuses on the sentences received by his co-defendants', and

also emphasizes that he was not the one who inflicted the cut to the victim's throat.

■ This assignment is without merit. The apparent acquittal of David Owens can play no part in the proportionality review. The statute directs that we compare appellant's sentence with "the penalty imposed" in similar cases. 21 O.S. 1981, § 701.13(C). The statute thus assumes the conviction of other defendants, and focuses on the sentence inflicted. It is inappropriate to judge the excessiveness of the sentence received by one convicted of first degree murder by reference to the "penalty imposed" i.e., acquittal, of one found innocent of a murder charge.

While the sentences received by David Blackwell (life in prison) and John Webster (ten years in prison upon a plea of guilty to a lesser charge) will not be overlooked by this Court, their cases are distinguishable, and do not detract from the persuasiveness of the evidence against appellant. Cf. *Smith v. State*, 659 P.2d 330, 337 (Okl.Cr. 1983) (vacated, — U.S. —, 104 S.Ct. 324, 78 L.Ed.2d 297). The conclusion is inescapable that appellant was the "leader" on the night in question.

After taking the victim to a telephone, it was appellant who decided that the men were "going to hit her," that is, "rob her." It was appellant who silenced the victim's protests in the car by putting his knife to her throat and warning her that she would get it "now" unless she remained quiet. Appellant decided that Webster would be "first" to have intercourse with the victim. Appellant later threatened Webster, and so forced him to join in the stabbing of the victim. Appellant directed the disposal of the body and the destruction of the victim's car.

Appellant's reliance upon evidence that he did not personally inflict the cut to the victim's throat is misplaced. Although Webster's first indication that the victim was to be harmed came from Owens and Blackwell, the evidence strongly suggests appellant's foreknowledge: appellant ordered the victim to assume a vulnerable position in the roadway on the pretext of

engaging in a sexual act with Owens. He then handed his knife to Owens, and nodded his head up and down. Almost immediately after the victim was slashed, appellant fell upon the victim with his knife.

We have compared this case with others involving murder in the course of robbery and other theft related offenses, and find that the death penalty assessed against appellant is not excessive or disproportionate. See *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984); *Coleman v. State,* 670 P.2d 596 (Okl.Cr.1983); *Stafford v. State,* 669 P.2d 285, 286 (Okl.Cr.1983); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr. 1983); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983); *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1983); *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983); *Ake v. State,* 663 P.2d 1 (Okl.Cr.1983); cert. granted, —— U.S. ——, 104 S.Ct. 1591, 80 L.Ed.2d 123; *Hatch v. State,* 662 P.2d 1377 (Okl.Cr. 1983); *Smith v. State,* 659 P.2d 330 (Okl. Cr.1983), vacated, —— U.S. ——, 104 S.Ct. 324, 78 L.Ed.2d 297; *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980); and *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980).

In conclusion, the death sentence was not imposed under the influence of passion, prejudice or other arbitrary factor; the evidence supports the jury finding of the aggravating circumstance; and the sentence of death is not excessive or disproportionate to the penalty imposed in other similar cases, considering both the crime and the defendant. 21 O.S.1981, § 701.-13(C).

The judgment and sentence is AFFIRMED.

PARKS and BRETT, JJ., concur.