STATE OF NORTH CAROLINA v. CLAUDE EDWARD DAMMONS

No. 81

(Filed 11 October 1977)

1. Criminal Law § 91 — prisoner — trial upon detainer charges

The State complied with G.S. 15-10.2(a) when a defendant confined in the State prison system was brought to trial upon charges which formed the basis of a detainer against him within eight months after defendant requested disposition of the charges.

2. Criminal Law § 91 — prisoner — trial of pending charges after request

G.S. 15A-711 does not require that a defendant who is confined in a penal institution be tried upon charges pending against him within six months after defendant files a written request for disposition of the charges; rather, the statute requires that trial be held within eight months after the written request — the six-month period provided by subsection (c) within which the district attorney must request defendant's temporary release for trial plus the sixty-day release period provided by subsection (a).

3. Criminal Law § 91 — Interstate Agreement on Detainers — inapplicability

Provisions of the Interstate Agreement on Detainers, G.S. Ch. 15A, Art. 38, do not apply to a North Carolina prosecution of a defendant incarcerated in North Carolina.

4. Kidnapping § 1.3 — instructions not supported by evidence or indictment

In a trial upon an indictment alleging that defendant kidnapped the victim by "removing" her from one place to another for the purpose of feloniously assaulting her with a deadly weapon and terrorizing her, the trial judge erroneously presented to the jury possible theories of conviction which were either not supported by the evidence or not charged in the indictment when he (1) read the kidnapping statute in its entirety without pointing out to the jury which parts of the statute were material to the case; (2) reiterated "holding this girl as a hostage" as being one of the "purposes" the jury could consider; (3) permitted the jury to consider whether defendant removed the victim for the purpose of sexually assaulting her; (4) instructed that defendant could be found guilty if he "confined or restrained or removed" the victim; and (5) instructed that defendant

could be found guilty if he removed the victim "for the purpose of facilitating the commission of any felony." G.S. 14-39.

**5. Kidnapping § 1; Criminal Law § 26.5— felonious assault as purpose of kidnapping — conviction of felonious assault and kidnapping**

   In a prosecution for kidnapping by removing the victim from one place to another for the purpose of committing a felonious assault upon her, the felonious assault itself was not an element of the offense of kidnapping, since it was not necessary for the State to prove the felonious assault but only that the *purpose* of the removal was a felonious assault; therefore, the felonious assault was a separate and distinct offense, and defendant could properly be convicted and sentenced for both kidnapping and felonious assault.

   Justice HUSKINS took no part in the consideration or decision of this case.

DEFENDANT appeals from judgment of *Crissman, J.*, at the 30 August 1976 Session of Guilford Superior Court. He was tried and convicted, upon proper bills of indictment, of aggravated kidnapping (76-CR-22707) and assault with a deadly weapon with intent to kill inflicting serious injury (76-CR-41561). The two cases were consolidated for trial. Sentences were imposed of 25 years to life imprisonment in the kidnapping case and 20 years imprisonment in the assault case. Although initially filed in the Court of Appeals, the case was transferred to this Court because life imprisonment was imposed as the maximum term of an indeterminate sentence on the kidnapping conviction. We allowed defendant's motion to bypass the Court of Appeals on the felonious assault conviction. Argued as No. 51 at the Spring Term 1977.

   *Rufus L. Edmisten, Attorney General, by Elizabeth C. Bunting, Assistant Attorney General, for the State.*

   *Anne B. Lupton, Assistant Public Defender, Attorney for defendant appellant.*

EXUM, Justice.

   Most of defendant's nineteen assignments of error argued in his brief are directed to his contentions that the trial court erred in: (1) denying his motion to dismiss all charges on the ground that certain of defendant's statutory rights to a speedy trial had been denied; (2) instructing the jury; and (3) denying his motion for arrest of judgment in the assault case. We find no merit in defendant's arguments regarding speedy trial, no error prejudicial to him in the court's instructions on the felonious assault charge, and no error in the denial of his motion for arrest of judgment. We do, however, find error prejudicial to defendant in the court's instructions on ag-

gravated kidnapping under the new statute, General Statute 14-39. We hold, therefore, that defendant is entitled to a new trial in the kidnapping case.

## I

Defendant urges error in the trial court's denial of his pre-trial motion to dismiss all charges on the ground that his right to a speedy trial was denied under applicable statutory provisions. He relies essentially upon General Statute 15-10.2(a) which provides:

> "*Mandatory disposition of detainers—request for final disposition of charges; continuance; information to be furnished prisoner.* — (a) Any prisoner serving a sentence or sentences within the State prison system who, during his term of imprisonment, shall have lodged against him a detainer to answer to any criminal charge pending against him in any court within the State, shall be brought to trial within eight months after he shall have caused to be sent to the district attorney of the court in which said criminal charge is pending, by registered mail, written notice of his place of confinement and request for a final disposition of the criminal charge against him; said request shall be accompanied by a certificate from the Secretary of Correction stating the term of the sentence or sentences under which the prisoner is being held, the date he was received, and the time remaining to be served; provided that, for good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary and reasonable continuance."

The record reveals these events leading up to defendant's trial, which began on 30 August 1976: On 9 December 1975 a warrant was issued charging defendant with kidnapping Colia Thomas on 20 September 1975. On 22 December 1975 a warrant was issued charging him with assault with a deadly weapon, to wit, a small caliber pistol, with intent to kill, inflicting serious injury on Mrs. Thomas. Defendant was at the time serving a prior sentence for voluntary manslaughter. On 14 January 1976 a detainer was filed with the Department of Correction against defendant in the kidnapping and assault cases. On 23 January defendant sent a handwritten petition addressed to the "Judge Presiding of Guilford County, District Court Division: Greensboro, North Carolina. ATTENTION: District Solicitor." The petition, received and filed in Guilford County on 28 January, liberally construed, requested that defendant be speedily tried or that all charges against him be dismissed. This petition was

accompanied by an application to proceed in forma pauperis and by a certificate signed by Ben L. Baker, Supervisor of Combined Records, and stating the defendant's existing sentence, his approximate release date and his location. On 8 April a new warrant was issued charging the same assault as before, but with a shotgun. Charges under the older warrant for assault with a pistol were dismissed. On 16 April a writ of habeas corpus ad prosequendum was issued requesting delivery of defendant to Guilford County on 21 April for trial calendared to begin on 22 April. Defendant was apparently brought to Guilford County and the new warrant for assault served upon him there on 22 April. On 29 April a preliminary hearing was held and probable cause found in the kidnapping case and the assault case. Indictments were returned in those cases on 3 May. However, a *new* indictment in the kidnapping case was returned on 7 June alleging for the first time the elements of aggravated kidnapping. On 30 August the cases proceeded to trial.

During the argument on 30 August on defendant's speedy trial motion, it appeared that the cases had been earlier calendared for trial on 1 June 1976 but on the state's motion a continuance was allowed on the ground of the absence of James Willie Dammons, a crucial state's witness then in FBI custody in Washington, D.C., on two armed robbery charges.

[1]   We note first that defendant's *pro se* request for trial was not sent by registered mail. Even if it had been, defendant was tried within eight months of the request. The state therefore complied with General Statute 15-10.2(a).

[2]   Defendant next invokes the provisions of General Statute 15A-711 which provide in pertinent part as follows:

"*Securing attendance of criminal defendants confined in institutions within the State; requiring solicitor to proceed.*—(a) When a criminal defendant is confined in a penal or other institution under the control of the State or any of its subdivisions and his presence is required for trial, the solicitor may make written request to the custodian of the institution for temporary release of the defendant to the custody of an appropriate law-enforcement officer who must produce him at the trial. The period of the temporary release may not exceed 60 days. The request of the solicitor is sufficient authorization for the release, and must be honored, except as otherwise provided in this section.

. . . .

"(c) A defendant who is confined in an institution in this State pursuant to a criminal proceeding and who has other criminal charges pending against him may, by written request filed with the clerk of the court where the other charges are pending, require the solicitor prosecuting such charges to proceed pursuant to this section. A copy of the request must be served upon the solicitor in the manner provided by the Rules of Civil Procedure, G.S. 1A-1, Rule 5(b). If the solicitor does not proceed pursuant to subsection (a) within six months from the date the request is filed with the clerk, the charges must be dismissed."

Defendant's contention is that this statute required him to be tried within six months of his 23 January petition. Assuming, without deciding, that defendant's petition constitutes a "written request" within the meaning of General Statutes 15A-711(c) served in accordance with this subsection, we nevertheless conclude that the state has complied with this statute. The statute provides that following defendant's request the state must proceed within six months "pursuant to subsection (a)," that is, not to trial but to request a defendant's temporary release for trial which "temporary release may not exceed 60 days." The legislature envisioned that trial following a request under General Statute 15A-711(c) would be held within *eight* months—the six-month period provided by subsection (c) plus the 60-day release period provided by subsection (a). This coincides with the eight-month period set out in General Statute 15-10.2(a). Here the state requested the appearance of the defendant for trial well within six months following defendant's request for trial. Defendant's trial was initially scheduled to begin on 1 June. This was within the 60-day maximum authorized for a temporary release. After the trial was continued defendant was presumably returned to the custody of the State Department of Correction. In any event he does not complain on appeal that the temporary release provisions of General Statute 15A-711(a) were violated.

[3] Finally defendant contends that Article 38 of Chapter 15A entitled "Interstate Agreement on Detainers" required that he be brought to trial within six months of his written request. He relies on Article III of the Interstate Agreement which provides:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer

has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner."

Suffice it to say that this statute has no application to these proceedings, which involve a North Carolina prosecution and a defendant incarcerated in North Carolina.

## II

[4]    We next consider defendant's contentions that the court erred in its instructions to the jury on the kidnapping charge. Defendant was tried under the new kidnapping statute, General Statute 14-39, effective 1 July 1975. That statute provides in pertinent part:

"*Kidnapping.* — (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield, or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(b) Any person convicted of kidnapping shall be guilty of a felony and shall be punished by imprisonment for not less than

25 years nor more than life. If the person kidnapped, as defined in subsection (a), was released by the defendant in a safe place and had not been sexually assaulted or seriously injured, the person so convicted shall be punished by imprisonment for not more than 25 years, or by a fine of not more than ten thousand dollars ($10,000), or both, in the discretion of the court."

The kidnapping indictment under which defendant was tried charged:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Claude Edward Dammons late of the County of Guilford on the 20th day of September 1975 with force and arms, at and in the County aforesaid, did unlawfully, wilfully and feloniously kidnap Jay Colia Thomas, a person who had attained the age of 16 years, by unlawfully removing her from one place to another, for the purpose of facilitating the commission of a felony, to wit: Assault With a Deadly Weapon, With Intent to Kill, Inflicting Serious Injury, for the purpose of doing serious bodily injury to her, and for the purpose of terrorizing her. After the commission the Assault With a Deadly Weapon, With Intent to Kill, Inflicting Serious Bodily Injury, the said CLAUDE EDWARD DAMMONS did not release Jay Colia Thomas in a safe place, and as a result of the said action, the said Jay Colia Thomas was seriously injured against the form of the statute in such case made and provided and against the peace and dignity of the State."

The state produced evidence tending to show that defendant initially accosted the victim, Mrs. Jay Colia Thomas, from his automobile as she walked with her brother toward her mother's home in Greensboro. She kept walking, but he pulled up in front of her mother's house and introduced himself as Reverend Nathaniel Davis. Dammons was at that time an escapee from incarceration following a plea of guilty to a manslaughter charge. During the week following this meeting, defendant saw Colia Thomas several times, almost always in the company of others, including her two young children and defendant's nephew, Willie. In the early afternoon of Saturday, 20 September 1975, about a week after their first meeting, Dammons, Mrs. Thomas, her children, Willie and defendant's brother visited a farm or country house on Ritters Lake Road. Defendant's brother and Willie left the others to feed the dogs and mow the lawn but returned later to pick them up.

That evening Mrs. Thomas left her two children with her mother and returned with defendant to her own apartment for some

canned goods. She told Dammons she could not go out with him that night because she had to prepare for a church activity the next day. When the two returned to the home of Mrs. Thomas' mother, she requested that they go to the store for some soap. Mrs. Thomas left with Dammons and Willie, but they returned to her apartment rather than proceeding to the store, since defendant claimed to have left something there. Dammons and Mrs. Thomas went inside and, for the first time, he proposed having sexual relations with her. She rejected his advances. Dammons then told her he would take her to the store for the soap, and they and Willie returned to the car. Dammons, instead of going to the store, began driving into the country. Mrs. Thomas asked him where he was going. He refused to say. She asked to be let out of the car. Dammons refused. Dammons asked Willie whether he should shoot Mrs. Thomas. Willie told him not to, that she was a nice girl.

When they reached the farm on Ritters Lake Road, Dammons tried to force Mrs. Thomas from the car, pulling her and beating her about the face. She attempted to walk away toward the dog-house, then turned and saw Dammons point a shotgun, first at the dog, then at her. Saying nothing, Dammons shot Mrs. Thomas who fell to the ground. He told her then that she was "too pure to live," that "didn't no woman turn him down." Immediately he shot her again. Willie saw him fire the gun the second time, standing directly over the victim's body.

Wrapping Mrs. Thomas in a blanket, the two men put her in the trunk of the car, apparently believing her dead. They drove to Sanford, stopping once for gas. When Mrs. Thomas began beating on the trunk and calling out Dammons threatened to blow her head off. He took her to the home of his so-called "common-law" wife, Gladys, who persuaded him to allow Mrs. Thomas to be taken to a hospital by Willie, Gladys and her daughter.

The victim's injuries were extensive, requiring several surgical operations and many months' hospitalization. She was left a partial paraplegic, losing the use of both legs and being partially deprived of the use of one arm.

Dammons' evidence tended to conform in most respects to that of the state until the events of the day of the shooting. He said he gave a false name because he was an escapee and added "Reverend" because he was taking a Bible study correspondence course and had purchased a minister's certificate. Dammons testified that another man, whom he had met once but whose name he did not know, was at

Mrs. Thomas' apartment that Saturday when they returned to look for his necklace. When they prepared to leave, this other man asked for a ride to town but agreed to ride first to the farm on Ritters Lake Road so that Dammons could feed his dogs. At the Ritters Lake Road property, when Dammons was inside getting water, he heard two shots. Willie ran inside and told Dammons that the man had shot Colia. Dammons found her, wrapped her in a bedspread and put her in the trunk to avoid her being seen by police on their way to Sanford to get help from Gladys. He said he knew of no hospital nearby in Greensboro and, being an escapee, feared questioning if he took Mrs. Thomas to the hospital himself. He did not look for the other man, who had disappeared when Dammons came outside, but he did find on the ground a shotgun which he had borrowed from a friend.

The court instructed the jury in part as follows:

"Members of the jury, the Court then charges you that if you find from the evidence beyond a reasonable doubt that on this night of September 20, 1975, that the defendant, Claude Edward Dammons, unlawfully *confined* or *restrained* or removed Colia Thomas and that when he did so, that he did it for the purpose of committing an assault, a felonious assault, that he did so for the purpose of *either assaulting her sexually* or assaulting her with a shotgun, and if you are further satisfied, members of the jury, that she had not consented to being removed in the manner in which she was removed out to this Ritters Lake spot and that *she did not consent to any sexual assault* or any other type of assault on this occasion and that she was serious injured as a result of this then it would be your duty to return a verdict of guilty of aggravated kidnapping as charged in this bill of indictment.

. . . .

"[F]or the defendant to be found guilty of aggravated kidnapping, the State must prove beyond a reasonable doubt that the defendant *confined* or *restrained* or removed Colia Thomas from one place to another and that he did it unlawfully and that he did it for the purpose of committing an assault upon her.

"Perhaps I should add that if he did this *for the purpose of facilitating the commission of any felony,* or if he did it for the purpose of doing a serious bodily harm on her, and if, when he put her in the trunk of the car, confining her and restraining her in that way, terrorizing her by such act, and by that means

restrained her and removed her, and if you are further satisfied that he did that contrary to her will and wishes, that would amount to kidnapping under our statute . . . . " (Emphases added.)

During their deliberations the jury returned to court to request further explanation of the kidnapping offense, whereupon the trial judge read General Statute 14-39(a) *in its entirety.* He then said, "That, within itself, might be explanation enough. That is the statute upon which it is based." The court then charged:

"Now, the court charged you that the State must satisfy you beyond a reasonable doubt that this defendant did *confine or restrain* in some manner or remove from one place to another the person of Colia Thomas and the defendant did this unlawfully, and, third, that *he did this for the purpose of holding this girl as a hostage* . . . . " (Emphases added.)

To those portions of the foregoing instructions rendered in italics defendant assigns error.

These assignments of error to the instructions are well taken. The instructions present to the jury possible theories of conviction which are either not supported by the evidence or not charged in the bill of indictment. It is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the evidence, *State v. Duncan,* 264 N.C. 123, 141 S.E. 2d 23 (1965); *State v. Gurley,* 257 N.C. 270, 125 S.E. 2d 445 (1962), or by the bill of indictment, *State v. Jones,* 227 N.C. 94, 40 S.E. 2d 700 (1946); *State v. Rush,* 19 N.C. App. 109, 197 S.E. 2d 891 (1973); *see State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365 (1960), *cert. denied,* 365 U.S. 855 (1961), *rev'd on other grounds,* 384 U.S. 737 (1966); *but compare State v. Moore,* 284 N.C. 485, 202 S.E. 2d 169 (1974).

In reading General Statute 14-39(a) in its entirety without pointing out to the jury which parts of it were material to the case, *see State v. Butler,* 269 N.C. 733, 153 S.E. 2d 477 (1967), the trial court permitted the jury to consider various theories of kidnapping such as holding "for ransom or as a hostage" or "facilitating flight." Immediately thereafter he reiterated "holding this girl as a hostage" as being one of the "purposes" the jury could consider. These theories of the crime were neither supported by the evidence nor charged in the bill of indictment. The instructions also permitted the jury to consider whether defendant removed the victim for the purpose of sexually assaulting her. While this theory of the case might be supported by the evidence, it is not charged in the indict-

ment. The trial judge repeatedly told the jury that the defendant could be found guilty if he "confined or restrained or removed" the victim. As an abstract legal proposition the instruction is correct. There was, furthermore, evidence of confinement, restraint, and removal. The indictment, however, charged only that defendant kidnapped the victim "by unlawfully removing her from one place to another."

It seems clear that the theory of the state's case *as charged in the indictment* in light of the evidence adduced was that defendant kidnapped Mrs. Thomas by "removing" her from an area near her apartment to the farm on Ritters Lake Road where he proceeded to terrorize and feloniously assault her, which, the state alleged, were the purposes of the removal. Had the state desired to prosecute on the theory that defendant confined and restrained the victim by, perhaps, placing her in the trunk of the car, it should have so alleged by way of an additional count in the indictment. General Statute 15A-924(a) provides, in part:

"A criminal pleading must contain:

. . . .

(2) A separate count addressed to each offense charged, but allegations in one count may be incorporated by reference in another count.

. . . .

(5) *A plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof* with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." (Emphasis added.)

In *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171 (1968), the indictment for first degree burglary alleged that defendant intended to "feloniously ravish and carnally know" the person who occupied the dwelling. This Court held it was error to instruct the jury that defendant would be guilty if he entered with "the intent to commit a felony." The Court said, 274 N.C. at 464, 164 S.E. 2d at 176, "[t]he indictment having identified the intent necessary, the State was held to the proof of that intent." In this case the indictment charged that defendant's purposes in removing the victim were to facilitate "the commission of a felony, to wit: Assault With a Deadly Weapon, With

Intent to Kill, Inflicting Serious Injury . . . doing serious bodily injury to her, and . . . terrorizing her." It was prejudicial error, therefore, for the trial court to instruct that if defendant "did this for the purpose of facilitating the commission of any felony . . . that would amount to kidnapping."

For these errors in the charge defendant is entitled to a new trial in the kidnapping case.

### III

[5] We next consider defendant's contention that his motion for arrest of judgment on the charge of assault with a dangerous weapon with intent to kill inflicting serious injury should have been granted because, he argues, the assault is an essential element of the aggravated kidnapping offense. He relies on *State v. Midyette*, 270 N.C. 229, 154 S.E. 2d 66 (1967). In *Midyette* two separate indictments were consolidated for trial. One indictment charged defendant with assaulting W. I. Robertson with a deadly weapon, to wit, a .22 caliber pistol, with intent to kill inflicting serious injuries. The second indictment charged him with resisting a public officer, W. I. Robertson, in the discharge of his duty, namely, attempting to arrest the defendant, by firing at and hitting the officer with bullets from a .22 caliber pistol. Defendant was convicted of both offenses. Sentences of imprisonment on each offense were ordered to run consecutively. This Court arrested judgment in the resisting arrest case, saying, 270 N.C. at 233-34, 154 S.E. 2d at 70:

> "The defendant was convicted and sentenced in Pamlico County Case No. 483 for the crime of assault with a deadly weapon upon W. I. Robertson, on 25 June 1966, by shooting him with a .22 caliber pistol. He could not thereafter be lawfully indicted, convicted and sentenced a second time for that offense, or for any other offense of which it, in its entirety, is an essential element. *State v. Birckhead*, 256 N.C. 494, 497, 124 S.E. 2d 838, 6 A.L.R. 3rd 888.

> "By the allegations it elects to make in an indictment, the State may make one offense an essential element of another, though it is not inherently so, as where an indictment for murder charges that the murder was committed in the perpetration of a robbery. In such case, a showing that the defendant has been previously convicted, or acquitted, of the robbery so charged will bar his prosecution under the murder indictment. *State v. Bell*, 205 N.C. 225, 171 S.E. 50. In *State v. Overman*, *supra*, we said:

" 'Where * * * the prosecution, under the second indictment, proceeds upon the theory that the offense charged therein was committed *by means of another offense* for which the defendant has previously been put in jeopardy, as where an indictment for murder charges that the murder was committed in the commission of another felony, for which the defendant has been previously tried and acquitted, the State has made the first alleged offense an element of the second and the defense of former jeopardy bars the subsequent prosecution.' " (Emphasis added.)

Conviction upon the former charge would, of course, lead to the same result.

"In the present instance, the State has, by the allegations in the indictment in Pamlico County Case No. 484, made the identical assault for which the defendant was convicted in Case No. 483, an element of the offense, resistance of a public officer, charged in the second indictment. It has alleged this same assault was the means by which the officer was resisted. Under this indictment, the State could not convict the defendant of resistance of a public officer in the performance of his duty without proving the defendant guilty of the exact offense for which he has been convicted and sentenced in Case No. 483, the shooting of W. I. Robertson with bullets from a .22 caliber pistol on 25 June 1966."

The principles relied on in *Midyette* have no application here. In the kidnapping case the felonious assault was alleged in the indictment as being one of the purposes for which defendant removed the victim from one place to another. The felonious assault itself is, therefore, not an element of the kidnapping offense. It was not necessary for the state to prove the felonious assault in order to convict the defendant of kidnapping. It need only have proved that the *purpose* of the removal was a felonious assault. The assault itself vis-a-vis the kidnapping charge is mere evidence probative of the defendant's purpose. The purpose proved would, without the assault itself, sustain conviction under the kidnapping statute but not under the assault statute. The felonious assault is, consequently, a separate and distinct offense. The fact that it was committed during the perpetration of a kidnapping does not deprive it of this character. *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216 (1966); *see also State v. Richardson*, 279 N.C. 621, 185 S.E. 2d 102 (1971).

The indictments in this case present a situation analogous to cases in which the indictment charges felonious breaking and entering by alleging that the breaking was done with the intent to commit a specified felony inside the building or dwelling. Often, on appropriate facts, such indictments also allege in a separate count that the felony intended to be committed at the time of the breaking was in fact committed. In such cases it is not necessary to prove that the felony intended to be committed at the time of the breaking was actually accomplished in order to convict of the felonious breaking. *State v. Sawyer*, 283 N.C. 289, 196 S.E. 2d 250 (1973); *State v. Smith*, 266 N.C. 747, 147 S.E. 2d 165 (1966). Moreover, if the defendant is convicted of both offenses, he may be sentenced on both as they are separate and distinct offenses. *See State v. Johnson*, 18 N.C. App. 338, 196 S.E. 2d 612, *cert. denied*, 283 N.C. 668, 197 S.E. 2d 877 (1973).

Because of the unlikelihood of their recurrence in a new trial, we need discuss no more of defendant's assignments of error in the kidnapping case. We have carefully reviewed the remaining assignments of error and find them of no merit.

In Case No. 76-CR-41561 — No error.

In Case No. 76-CR-22707 — New trial.

Justice HUSKINS took no part in the consideration or decision of this case.