STATE OF NORTH CAROLINA v. ERNEST LEE MARTIN

No. 797SC922

(Filed 17 June 1980)

1. **Robbery § 4.3– armed robbery – money given to defendant by victim – sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecution for armed robbery where it tended to show that defendant told the victim that he did not want to hurt him and did not want his money, but defendant was at the same time pointing a sawed-off shotgun at the victim, and the victim was in fear when he subsequently placed his wallet containing money on the front seat of the car which defendant was driving; although defendant did not take possession of the wallet at that time, evidence that the victim was soon thereafter placed in the trunk of the car and that the wallet was gone when the vehicle was later found in a town about thirty miles away was sufficient to permit the inference that a taking occurred at the time the victim was forced into the trunk and was effectively deprived of his wallet and cash therein, and that the taking followed the assault sufficiently closely in time to satisfy the elements of armed robbery.

2. **Robbery § 3.2– armed robbery – gun like one used by defendant – admission not prejudicial**

    In a prosecution for armed robbery, even if an exhibit of the State was not in fact the same shotgun used by defendant, in view of defendant's own testimony that it was "like" the one he had possessed, any error in its admission was harmless.

3. **Kidnapping § 1.3– age of victim – submission of issue not required**

    There was no merit to defendant's contention that the trial court erred in failing to submit the issue of a kidnapping victim's age to the jury, since the victim's age is not an essential element of the crime of kidnapping itself.

4. **Kidnapping § 1.3; Robbery § 5– armed robbery and kidnapping – instructions as to separate crimes proper**

The trial court in an armed robbery and kidnapping case sufficiently instructed the jury that the armed robbery offense must have been completed prior to the beginning of the kidnapping offense where the court instructed the jury that the State was required to prove, among other things, "that [the] carrying or transporting of [the victim] was a separate complete act, independent of and apart from the armed robbery," and that this was done "after committing robbery with a firearm."

5. **Constitutional Law § 34; Criminal Law § 26– double jeopardy – one act violating different statutes.**

If the facts alleged in one indictment, if given in evidence, would sustain a conviction under a second indictment, or if the same evidence would support a conviction in each case, a defendant may not be tried, convicted and punished for both offenses; if, however, a single act constitutes an offense against two statutes and each statute requires proof of an additional fact which the other does not, the offenses are not the same in law and in fact, and a defendant may be convicted and punished for both.

6. **Criminal Law § 26.5; Larceny § 1.1; Robbery § 1.2– armed robbery – larceny of money and automobile – conviction for both offenses double jeopardy**

In a prosecution of defendant for armed robbery and larceny, judgment of the trial court imposing sentence for misdemeanor larceny of the victim's automobile must be arrested, since the evidence necessary to convict defendant of both offenses was substantially the same; inherent in the jury's verdict finding defendant guilty of armed robbery was a finding that defendant took and carried away property consisting of the victims cash and automobile intending to deprive him of the property permanently; and both offenses for which defendant was indicted and convicted arose out of the same continuous course of conduct.

7. **Constitutional Law § 34; Criminal Law § 26– double jeopardy – application to three situations**

There are essentially three contexts in which the N. C. Supreme Court has held that conviction and punishment of a defendant for more than one offense results in impermissible multiple punishment: (1) where a defendant is convicted and sentenced for both felony murder and the underlying felony; (2) where a defendant is convicted and sentenced for two offenses, one being a lesser included offense of the other; and (3) where a defendant is convicted and sentenced for two offenses each arising out of the same conduct but to which the legislature has affixed two criminal labels and prosecutorial abuse is evident.

8. **Criminal Law § 26; Kidnapping § 1; Robbery § 1.2– armed robbery – kidnapping to facilitate flight after armed robbery – two convictions – no double jeopardy**

Defendant was not twice placed in jeopardy when he was tried and convicted of kidnapping for the purpose of facilitating flight following his

State v. Martin

participation in an armed robbery and of armed robbery, since the intent of the legislature in establishing the punishment for kidnapping was to impose an indivisible penalty for restraint and removal for specified purposes, no hypothetical part of which penalty represents a punishment for the felony which gave rise to the flight of defendant and his removal of the victim, and the crimes of armed robbery and kidnapping involve vastly different social implications, and the legislature is clearly free to denounce each as a separately punishable offense. G.S. 14-39(a).

APPEAL by defendant from *Rouse, Judge.* Judgment entered 28 March 1979 in Superior Court, NASH County. Heard in the Court of Appeals 28 February 1980.

In separate bills of indictment returned as true bills defendant was charged as follows:

In Case No. 79CRS610 defendant was charged with having on or about 22 December 1978 unlawfully and feloniously kidnapped Edgar Wells, III, a male person over 16 years of age by unlawfully removing him from one place to another without his consent "for the purpose of facilitating the flight of Earnest [sic] Lee Martin following his participation in the commission of a felony, to wit: robbery with a dangerous weapon."

In Case No. 79CRS611 defendant was charged with having on or about 22 December 1978 willfully and feloniously stolen, taken and carried away one 1962 four-door Mercury sedan, License No. PRE-508, the personal property of Edgar Wells, III, having a value of $300.00.

In Case No. 79CRS612 defendant was charged with having on or about 22 December 1978 wilfully, forcibly and violently taken, stolen, and carried away U.S. Currency in the amount of $120.00 from the person of Edgar Wells, III, with the use and threatened use of a .12 gauge sawed-off shotgun whereby the life of Edgar Wells III, was endangered, and threatened.

Defendant pled not guilty to all charges. The cases were consolidated for trial.

At trial upon these indictments, James Edgar Wells testified that on 22 December 1978 he was working at Strick's Truck Stop in Rocky Mount, N.C. At about 1:00 a.m. he was working near the gas pumps and noticed a black male wearing a toboggan, who he identified at trial as the defendant, standing around in the parking lot area. Wells spoke to him briefly at that time. Wells's 1962 Mercury Comet was parked in front of the truck stop building, and defendant asked Wells if it was his car and if it ran "good," to which Wells responded "Yes." During the next two hours Wells noticed that the defendant was still on the truck stop premises. At one point Wells told him to move from the pit area of the truck stop. At approximately 3:30 a.m. Wells told defendant that he "was going to have to call somebody if he didn't go ahead and get out of the way." Defendant told Wells that he was going to get his knapsack, and defendant went to the rear of the truck stop. Defendant called Wells to the rear, and Wells saw him reach down for something. The next thing Wells saw was defendant holding a faded, chrome-plated, sawed-off shotgun. Defendant walked toward Wells, pointing the gun at Wells's heart. Wells had a wallet with him in which he had about $150 to $160 in cash belonging to Strick's Truck Stop which he had collected between 8 p.m. and 3 a.m. Wells testified:

When I first saw that gun or whatever he had, it scared me. As soon as I saw that gun I offered him some money. I had the money in a truck driver's wallet that had the chain missing. I carry it in my back pocket and had it in my back pocket. When I first saw the gun I was about 12 feet from Lee Martin. As soon as I saw the gun, I did not instantly pull out the wallet and say here is the money or something to that effect. But I offered him . . . I pulled the wallet out of my back pocket and offered him the money. I recall him telling me, "I don't want to hurt you." He told me, "I don't want to hurt you." We all talked about the money for a few minutes. I told him to go on and take the money. He told me, "I don't want to hurt you. I don't want your money." I kept telling him to take the money. That is the way the conversation went. When I first saw the gun he didn't demand the money from me. He didn't even ask for it. I offered it to him. He told me he didn't want it and he told me he didn't want to hurt me.

State v. Martin

Then we went back around to the 1962 Comet in front of the building. I laid the truck driver's wallet on the front seat. I laid that on the front seat. I never gave it to Lee. I laid it on the front seat. I never gave it to Lee. I just laid it on the front seat of the car. I drove. I drove around back.

After Wells drove his automobile to the rear of the truck stop as directed by the defendant, defendant told Wells to cut the engine off and get out of the car. Wells did so and was instructed by defendant to go to the rear of the automobile and open the trunk. The defendant ordered Wells to get into the trunk, which Wells did after emptying its contents. Wells lay in the trunk for fifteen or twenty minutes while the vehicle was stationary. After that time, the automobile began to move. After twenty-five or thirty minutes defendant stopped the car for about ten minutes and then drove on another fifteen minutes before stopping again. Defendant then opened the trunk and, pointing the shotgun at Wells, told him to get out. Defendant asked Wells if he knew where he was and then pointed him towards Rocky Mount. The two men shook hands, and defenddant drove off. Wells hitchhiked back to Rocky Mount. He testified that, in his opinion, the fair market value of his car was $200.00 or less.

The Deputy Sheriff of Nash County who investigated the matter testified that Wells's car was found in Weldon in front of the home of defendant's sister on 24 December 1978. Wells's wallet was no longer in the vehicle. On 29 December 1978 defendant was arrested.

Defendant testified that he arrived at Strick's Truck Stop at about 11:00 p.m. on 22 December after walking to Rocky Mount from Wendell. He had a sawed-off shotgun with him which he was taking to his mother's home in Weldon to leave. Defendant told Wells that he was trying to find a ride hitchhiking. Defendant stated that when he went around to the rear of the truck stop when Wells told him to leave, Wells followed him. Defendant tried to hide the gun to keep Wells from calling the police. When Wells saw the gun and became frightened, he offered defendant his money and his car. Defendant assured him that he did not want to hurt him, that he was only trying to

get a ride. Wells offered to take defendant wherever he wanted to go and told him to take his money. Defendant denied having placed Wells into the trunk of the car, stating that Wells got into the driver's side of the car and defendant sat next to him. After the automobile was moving, Wells asked defendant to drive, and they traded places. The gun lay on the floor on the driver's side. After defendant drove about fifteen miles north on Highway 301 and Interstate 95, he stopped the vehicle. Defendant told Wells that he was going to Weldon to see his mother and his sister to take his gun there. Defendant told Wells to take his car and go home. Wells insisted that he keep the car, and defendant drove on to Weldon to his sister's house. During the entire ride defendant had assured Wells that he did not intend to hurt him.

The jury found defendant guilty of kidnapping, misdemeanor larceny, and armed robbery. The court entered judgment sentencing defendant to prison for not less than twenty nor more than twenty-five years in Case No. 79CRS610, two years in Case No. 79CRS611, and not less than twenty nor more than twenty-five years in Case No. 79CRS612, all sentences to run concurrently. From these judgments defendant appealed.

*Attorney General Rufus Edmisten, by Elizabeth C. Bunting, Assistant Attorney General, for the State.*

*Early and Chandler by John S. Williford, Jr. for defendant appellant.*

PARKER, Judge.

Defendant challenges on appeal the sufficiency of the evidence to support his conviction for armed robbery. Although the record does not reflect that defendant renewed his motion to dismiss at the close of all of the evidence, the provisions of G.S. 15A-1227(d) and G.S. 15A-1446(d)(5) allow him to raise this issue on appeal. *State v. Alston,* 44 N.C. App. 72, 259 S.E. 2d 767 (1979). In determining the sufficiency of the evidence to go to the jury, all of the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from it. *State v. Lee,* 294 N.C. 299, 240 S.E. 2d 449 (1978). When so viewed, that evidence must be suffi-

cient to permit a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

[1] Viewed in the light most favorable to the State, the evidence in the present case was sufficient to permit a rational trier to find defendant guilty of armed robbery beyond a reasonable doubt.

The gist of the offense of robbery with firearms defined by G.S. 14-87 is the accomplishment of the robbery by the use or threatened use of firearms or other dangerous weapons whereby the life of a person is endangered or threatened. *State v. Harris,* 281 N.C. 542, 189 S.E. 2d 249 (1972); *State v. Ballard,* 280 N.C. 479, 186 S.E. 2d 372 (1972). In the present case the State's witness Wells testified that he offered his wallet containing the money when he saw defendant's shotgun pointed at his chest. Although defendant told Wells "I don't want to hurt you, I don't want your money," the State's evidence tends to show that defendant was pointing the sawed-off shotgun at Wells at the same time, and that Wells was in fear when he subsequently placed the wallet containing the money on the seat of the car. Further, although defendant did not take possession of the wallet at that time, the evidence that Wells was soon thereafter placed in the trunk of the car and that the wallet was gone when the vehicle was later found in Weldon is sufficient to permit the inference that a taking occurred at the time Wells was forced into the trunk and was effectively deprived of his wallet and the cash contained therein, and that the taking followed the assault sufficiently closely in time to satisfy the elements of armed robbery. *See State v. Lilly,* 32 N.C. App. 467, 232 S.E. 2d 495, *cert. denied* 292 N.C. 643, 235 S.E. 2d 64 (1977). Defendant's assignment of error directed to the sufficiency of the evidence is overruled.

[2] Defendant also assigns error to the admission of State's Exhibit No. 1, a twelve gauge sawed-off shotgun, on the grounds that insufficient foundation was laid to establish that it was the same weapon in his possession on 22 December 1978. This assignment of error is without merit. Defendant admitted at trial that he had a twelve-gauge sawed-off shotgun with him

on the date in question and that State's Exhibit No. 1 was "like" the one he had, but was not the same gun. Even if it be assumed that State's Exhibit No. 1 was not in fact the same shotgun used by defendant, in view of defendant's own testimony that it was "like" the one he had possessed, any error in its admission was harmless. *State v. Patterson*, 284 N.C. 190, 200 S.E. 2d 16 (1973).

[3] Defendant's several assignments of error to the court's instructions on the kidnapping charge are likewise without merit. He contends that under G.S. 14-39(a)(2) the restraint or removal of the victim must be without his consent if the victim is 16 years of age or over, and that the court erred in failing to submit the issue of Wells's age to the jury where there was no direct evidence establishing that he was over 16 years of age or over, and that the court erred in failing to submit the issue of Wells's age to the jury where there was no direct evidence establishing that he was over 16 years of age. This argument was recently rejected by our Supreme Court in *State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980): "[T]he victim's age is not an essential element of the crime of kidnapping itself, but it is, instead, a factor which relates to the state's burden of proof in regard to consent." 299 N.C. at 40, 261 S.E. 2d at 196.

[4] Defendant also argues that the court erred in its instructions on the kidnapping charge in not clearly instructing the jury that the armed robbery offense must have been completed prior to the beginning of the kidnapping offense. We disagree. The court instructed the jury that the State was required to prove, among other things, "that [the] carrying or transporting of Wells was a separate complete act, independent of and apart from the armed robbery," and that this was done "*after* committing robbery with a firearm" (emphasis added). Based on these instructions, we fail to see how the jury could have been misled.

Having determined that the evidence was sufficient to support the conviction for armed robbery, we consider defendant's contention that he was placed in jeopardy more than once on the grounds that the armed robbery and the larceny were part of a single transaction and that the armed robbery was merged into the kidnapping charge. The principle upon which defend-

ant relies was articulated by our Supreme Court in *State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569 (1972):

> The constitutional guaranty against double jeopardy protects a defendant from multiple punishments for the same offense, a principle recognized in *State v. Parker*, 262 N.C. 679, 138 S.E. 2d 496 (1964). *See also U.S. v. Benz*, 282 U.S. 304, 309, 75 L. Ed. 354, 357, 51 S. Ct. 113, 114 (1931). The fact that concurrent, identical sentences [are] imposed in each case makes this duplication of conviction and punishment no less a violation of defendant's constitutional right not to be put in jeopardy twice for the same offense.

282 N.C. at 173, 192 S.E. 2d at 579. *Accord, State v. Raynor*, 33 N.C. App. 698, 236 S.E. 2d 307 (1977).

[5] The double jeopardy test generally applied is alternative in character: That is, if the facts alleged in one indictment, if given in evidence, would sustain a conviction under a second indictment, *or* if the same evidence would support a conviction in each case, a defendant may not be tried, convicted and punished for both offenses. *State v. Birckhead*, 256 N.C. 494, 124 S.E. 2d 838 (1962); *State v. Hicks*, 233 N.C. 511, 64 S.E. 2d 871 (1951). If, however, a single act constitutes an offense against two statutes and each statute requires proof of an additional fact which the other does not, the offenses are not the same in law and in fact and a defendant may be convicted and punished for both. *State v. Midgett*, 214 N.C. 107, 198 S.E. 613 (1938).

[6] Applying this test in the present case to defendant's convictions for armed robbery and larceny, we conclude that the judgment in Case No. 79CRS611 imposing sentence for misdemeanor larceny of Wells's automobile must be arrested. Although the facts alleged in each indictment may state separate offenses occurring on the same date, the evidence necessary to convict defendant of both offenses was substantially the same. Inherent in the jury's verdict finding defendant guilty of armed robbery was a finding that defendant took and carried away property consisting of cash from Wells's possession intending to deprive him of its use permanently. Equally so, inherent in the jury's verdict finding defendant guilty of larceny

was a finding that defendant took and carried away Wells's automobile intending to deprive him of it permanently. Although the taking of the currency and the taking of the automobile may not have occurred at the exact same point in time, both offenses for which defendant was indicted and convicted arose out of the same continuous course of conduct. The verdicts of guilty of two separate offenses have the same effect as if defendant had been found guilty after trial on a single indictment which charged the larceny of both the automobile and the cash. *See, State v. Potter*, 285 N.C. 238, 204 S.E. 2d 649 (1974).

Defendant's argument that he was also placed twice in jeopardy when he was tried, convicted and sentenced for kidnapping in Case No. 79CRS610 and armed robbery in Case No. 79CRS612 rests upon the theory that the State bound itself in the bill of indictment in Case No. 79CRS610 to prove all of the elements of the armed robbery and, therefore, that the armed robbery offense merged into the kidnapping.

The indictment in Case No. 79CRS610 reads as follows:

THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 22nd day of December, 1978, in Nash County Earnest [sic] Lee Martin unlawfully and wilfully did feloniously kidnap Edgar Wells, III., a male person who had attained the age of 16 years; by unlawfully removing him from one place to another without his consent; and for the purpose of facilitating the flight of Earnest [sic] Lee Martin following his participation in the commission of a felony, to-wit: robbery with a dangerous weapon. This kidnapping was committed in violation of the following law: GS 14-39

The offense of kidnapping for which defendant was indicted is defined in G.S. 14-39:

§ 14-39. *Kidnapping*. – (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the

age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

The kidnapping statute was enacted by the General Assembly in 1975 Sess. Laws, c. 843, s. 1. Prior to that time, the common law definition of kidnapping governed, which included the elements both of detention and asportation of the victim. *State v. Ingland*, 278 N.C. 42, 178, S.E. 2d 577 (1971); *State v. Murphy*, 280 N.C. 1, 184 S.E. 2d 845 (1971). In adopting the new statute, the General Assembly intended to reject the Supreme Court's holding in *State v. Ingland, supra,* that there must be both detention and asportation of the victim to constitute the substantive offense. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978).

Our Supreme Court has had occasion in recent years to review the double jeopardy implications of separate convictions for a felony and for kidnapping under an indictment alleging the confinement, restraint or removal for the purpose of "[f]acilitating the commission of [that]felony." In *State v. Dammons*, 293 N.C. 263, 237 S.E.2d 834 (1977), the Supreme Court found no error in the convictions and sentences for the offenses of felonious assault and kidnapping where the purpose of the kidnapping was to facilitate the commission of the felonious assault:

In the kidnapping case the felonious assault was alleged in the indictment as being one of the purposes for which defendant removed the victim from one place to another. The felonious assault itself is, therefore, not an element of the

kidnapping offense. It was not necessary for the State to prove the felonious assault in order to convict the defendant of kidnapping. It need only have proved that the *purpose* of the removal was a felonious assault. The assault vis-a-vis the kidnapping charge is mere evidence probative of the defendant's purpose. The purpose proved would, without the assault itself, sustain conviction under the kidnapping statute but not under the assault statute. The felonious assault is, consequently, a separate and distinct offense.

293 N.C. at 275, 237 S.E. 2d at 842. *Accord, State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978).

Similar reasoning could be applied to defendant's convictions for armed robbery and kidnapping in the present case were it not for the fact that defendant was not indicted under the clause of G.S. 14-39(a) defining kidnapping as confinement, restraint, or removal "for the purpose of ... [f]acilitating the commission of any felony," but rather under the clause proscribing confinement, restraint or removal "for the purpose of .... facilitating flight of any person following the commission of a felony." Unlike the former clause, the latter clause involved here does contemplate the necessity of proof of a completed felony. We hold, however, that principles of double jeopardy still do not apply in a case such as is here presented.

[7] The question of how and when to apply double jeopardy principles to cases in which the issue of multiple punishment is raised may be resolved through consideration of the evils at which the constitutional protection is aimed. There are essentially three contexts in which our Supreme Court has held that conviction and punishment of a defendant for more than one offense results in impermissible multiple punishment: (1) where a defendant is convicted and sentenced for both felony murder and the underlying felony; *e.g. State v. White*, 291 N.C. 118, 229 S.E. 2d 152 (1976); *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214 (1975); *modified on other grounds*, 428 U.S. 903, 96 S. Ct. 3207, 49 L. Ed. 2d 1208 (1976); (2) where a defendant is convicted and sentenced for two offenses, one offense being a lesser included offense of the other; *e.g. State v. Hatcher*, 277 N.C. 380,

177 S.E. 2d 892 (1970); and (3) where a defendant is convicted and sentenced for two offenses each arising out of the same conduct but to which the legislature has affixed two criminal labels and prosecutorial abuse is evident. *e.g. State v. Summrell, supra; State v. Midyette,* 270 N.C. 229, 154 S.E. 2d 66 (1967). In the first two of these situations our Supreme Court has implicitly recognized that the penalty imposed by the legislature for offense A is hypothetically the sum of a series of penalties, among which is a discrete penalty imposed for offense B. Thus, imposition of a separate penalty for offense B results in the kind of invidious "multiple punishment" which the Fourteenth Amendment to the Federal Constitution and Article I, § 19 of our State Constitution forbid. By way of illustration, the penalty for felony-murder hypothetically includes some sub-penalty representing punishment for the underlying felony. The felony itself substitutes for the elements of premeditation and deliberation which the state would otherwise be required to prove to support a conviction of first degree murder. Similarly, the penalty for rape includes hypothetically discrete penalties for simple assault and for assault with intent to commit rape such that imposition of separate sentences for each offense would run afoul of double jeopardy limitations. In the third situation, the constitutional guaranty against double jeopardy protects a defendant from multiple punishments for what is essentially the same act to which the legislature has affixed more than one criminal label.

In other situations, however, our Supreme Court has recognized that the legislature may intend to punish steps in a single criminal transaction separately, and that the punishment imposed for Offense A, the greater offense, would not include any element of punishment attributable to Offense B which may incidentally be a part of Offense A. Thus, in *State v. Chavis,* 232 N.C. 83, 59 S.E. 2d 348 (1950), the court held that a defendant could be convicted both of unlawfully possessing a quantity of non-taxpaid liquors and unlawfully transporting those same liquors:

> [W]e are not dealing with common law crimes but with statutory offenses; and not with a single *act* with two criminal labels but with *component transactions* violative of

distinct statutory provisions denouncing them as crimes. Neither in fact nor law are they the same. [citation omitted.]. They are not related as different degrees or major and minor parts of the same crime and the doctrine of merger does not apply. The incidental fact that possession goes with the transportation is not significant in law as defeating the legislative right to ban both or either. When the distinction between the offenses is considered in light of their purpose, vastly different social implications are involved and the impact of the crime of greater magnitude on the attempted suppression of the liquor traffic is sufficient to preserve the legislative distinction and intent in denouncing each as a separate punishable offense.

232 N.C. at 85-86, 59 S.E. 2d at 349-350. *Accord, State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973).

[8] Viewed in light of the above considerations, defendant's argument that he has been subjected to multiple punishment in violation of his constitutional rights must fail. It is true that the State bound itself in the indictment in Case No. 79CRS610 to prove that defendant restrained or removed Edgar Wells for the purpose of facilitating flight following his participation in the commission of armed robbery. That the armed robbery may technically have become a factual element which the State was required to prove so as to show defendant's *purpose* in restraining and removing Edgar Wells as alleged, however, does not mandate application of principles of double jeopardy to arrest judgment in the armed robbery case. The gist of the offense proscribed by G.S. 14-39 is the unlawful, nonconsensual confinement, restraint or removal of victim, for the purposes of committing certain acts specified in the statute. *State v. Williams,* 295 N.C. 655, 249 S.E. 2d 709 (1978). The penalty provided in G.S. 14-39(b) for the offense of kidnapping differs from those imposed for felony murder and from those imposed for offenses in which other lesser offenses are necessarily included, in that the intent of the legislature in establishing the punishment for kidnapping was to impose an indivisible penalty for restraint and removal for specified purposes, no hypothetical part of which penalty represents a punishment for the felony which gave rise to the flight of the defendant and his removal of the victim. The

crimes of armed robbery and kidnapping involve "vastly differ-ent social implications," and the legislature is clearly free to denounce each as a separately punishable offense. As our Su-preme Court has recognized, this legislative scheme does create a potential for prosecutorial abuse which would invoke consid-erations of double jeopardy, in that the legislative elimination of the asportation element from the definition of kidnapping may result in imposition of impermissible multiple punishment in a particular case, as where the removal or restraint alleged is the same conduct relied upon to support the underlying felony. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). In the present case, however, that potential has not been realized.

The result is, the judgments imposing sentences in Case Numbers 79CRS610 and 612 for kidnapping and armed robbery are

Affirmed.

The judgment imposing sentence in Case No. 79CRS611 is

Arrested.

Judges MARTIN (Harry C.) and HILL concur.